## UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| JOSEPH G. CURTIS and ELIZABETH CURTIS, <br><br> Plaintiffs, <br><br> v. <br><br> AMERIQUEST MORTGAGE COMPANY and DEUTSCHE BANK NATIONAL TRUST COMPANY, AS TRUSTEE OF AMERIQUEST MORTGAGE SECURITIES, INC. ASSET-BACKED PASS THROUGH CERTIFICATES SERIES 2004-R10, UNDER THE POOLING AND SERVICING AGREEMENT DATED AS OF OCTOBER 1, 2004, WITHOUT RECOURSE, <br><br> Defendants. | C. A. No. 1:08-cv-10488 |

## NOTICE OF REMOVAL

Defendant Ameriquest Mortgage Company ("Ameriquest") hereby provides notice that it is removing this action originally commenced in the Superior Court for Barnstable County, Massachusetts, to the United States District Court for the District of Massachusetts. In support thereof, Ameriquest states as follows.

1.      Ameriquest exercises its rights under the provisions of 28 U.S.C. §§1332, 1441 and 1446, to remove this case from the Superior Court for Barnstable County, Massachusetts.

2.      On or about March 4, 2008, plaintiffs, Joseph G. Curtis and Elizabeth Curtis, filed a Complaint Seeking Damages and Equitable Relief Including Injunctive Relief to Stop Foreclosure ("Complaint") in the Superior Court for Barnstable County, Massachusetts under the

name and style of <u>Joseph G. Curtis and Elizabeth Curtis v. Ameriquest Mortgage Company and</u>

<u>Deutsche Bank National Trust Company, as Trustee of Ameriquest Mortgage Securities, Inc.</u>

<u>Asset-Backed Pass Through Certificates Series 2004-R10, Case No. BACV2008-00175</u>.[1]

3.    28 U.S.C. § 1441 (a) provides:

Except as otherwise expressly provided by Act of Congress, any civil action
brought in a State court of which the district courts of the United States have
original jurisdiction, may be removed by the defendant or the defendants, to the
district court of the United States for the district and division embracing the place
where such action is pending.  For purposes of removal under this chapter, the
citizenship of defendants sued under fictitious names shall be disregarded.

4.    This case was filed in the Superior Court, Barnstable County, Massachusetts, on

or about March 4, 2008, and has not been tried.  <u>See</u> <u>Exhibit A</u> (State Court Documents,

Complaint).  Defendant Ameriquest first received the initial pleading setting forth the claims for

relief upon which this action is based and the Summons and Order of Notice on March 6, 2008.

<u>See</u> <u>Exhibit A</u> (State Court Documents, National Registered Agents, Inc.'s Service of Process

Summary Transmittal Form).

5.    As more fully set forth below, this case is properly removed to this Court under

28 U.S.C. § 1441.  The Court has original jurisdiction pursuant to 28 U.S.C. § 1332(a) because

the matter in controversy as set forth in the plaintiffs' pleading exceeds the sum or value of

$75,000, exclusive of interest and costs, and is between citizens of different states.

---

[1]    A true and correct copy of the case materials served on Ameriquest ("State Court
Documents") is attached hereto as <u>Exhibit A</u>, which includes the following: National Registered
Agents, Inc.'s Service of Process Summary Transmittal Form, dated March 6, 2008; Summons
and Order of Notice, dated March 4, 2008; Scheduling Order for F Track, dated March 4, 2008;
Plaintiffs' <u>Ex Parte</u> Motion for a Temporary Restraining Order to Stop Foreclosure (with
supporting affidavit and draft order), dated March 4, 2008; and Complaint Seeking Damages and
Equitable Relief Including Injunctive Relief to Stop Foreclosure (with exhibits A through G),
dated March 4, 2008.

# I.    SUBJECT MATTER JURISDICTION

## A.    Diversity Jurisdiction Exists Pursuant to 28 U.S.C. § 1332(a).

### 1.    There is complete diversity of citizenship between Plaintiffs and Defendants.

6.    In determining whether complete diversity exists, the Court considers the citizenship of all properly joined parties.  28 U.S.C. § 1441(b).

7.    The Complaint states that the plaintiffs reside at 148 Hollow Road, Cotuit, in the Commonwealth of Massachusetts.  See Exhibit A (State Court Documents, Complaint, at ¶ 10). For purposes of diversity of citizenship under 28 U.S.C. § 1332, the plaintiffs are citizens of the Commonwealth of Massachusetts.

8.    Ameriquest is a corporation organized under the laws of the State of Delaware with its principal place of business in the State of California.  A "corporation shall be deemed to be a citizen of any State by which it has been incorporated and of the State where it has its principal place of business."  See 28 U.S.C. § 1332(c)(1).  For purposes of diversity of citizenship under 28 U.S.C. § 1332, Ameriquest is a citizen of a state other than the Commonwealth of Massachusetts.

9.    Deutsche Bank National Trust Company, as Trustee of Ameriquest Mortgage Securities, Inc. Asset-Backed Pass Through Certificates Series 2004-R10, under the Pooling and Servicing Agreement dated as of October 1, 2004, Without Recourse ("Deutsche Bank, as Trustee") is a national banking association.  National banking associations are deemed "citizens of the States in which they are respectively located."  See 28 U.S.C. § 1348.  The United States Supreme Court held that this language means that a national banking association is a citizen of the State in which its main office, as set forth in its articles of association, is located.  Wachovia Bank, N.A. v. Schmidt, 546 U.S. 303, 307 (2006).  The main office of Deutsche Bank, as Trustee

is located in the State of California.  For purposes of diversity of citizenship under 28 U.S.C.

§ 1332, Deutsche Bank, as Trustee is a citizen of a state other than the Commonwealth of

Massachusetts.

> **2.    The amount in controversy exceeds $75,000, exclusive of interest and costs.**

10.    The Complaint alleges that the plaintiffs entered into a mortgage loan with

Ameriquest.  See Exhibit A (State Court Documents, Complaint).  This mortgage, recorded at the

Barnstable County Registry of Deeds at Book 19256, beginning at page 179, states that the

amount of this loan is $465,000, plus interest, to be paid over the course of 30 years.

11.    The Complaint alleges, among other things, that the Court should cancel

plaintiffs' mortgage due to allegedly unconscionable and illegal contract terms.  See Exhibit A

(State Court Documents, Complaint, ¶¶ 70, 73).

12.    The jurisdictional amount in controversy requirement is satisfied because

plaintiffs seek to void their mortgage and cancel their loan, which is in an amount in excess of

$75,000.  See Exhibit A (State Court Documents, Complaint, ¶¶ 70-73).   "Courts have

repeatedly held that the value of the matter in controversy is measured not by the monetary

judgment which the plaintiff may recover but by the judgment's pecuniary consequences to those

involved in the litigation."  Richard C. Young & Co., Ltd. v. Leventhal, 389 F.3d 1, 3 (1st Cir.

2004); see also Hunt v. Wash. State Apple Advt'g Comm'n, 432 U.S. 333, 347 (1977) (stating

that "[i]n actions seeking declaratory or injunctive relief, it is well established that the amount in

controversy [for purposes of diversity jurisdiction] is measured by the value of the object of the

litigation.").  A plaintiff puts the entire value of the mortgage loan at issue where the plaintiff

seeks declaratory and injunctive relief against the enforcement of the mortgage contract.  See

Ericsson GE Mobile Commc'ns, Inc. v. Motorola Commc'ns & Elec., Inc., 120 F.3d 216, 220

(11th Cir. 1997) (stating that "plaintiff's claim for monetary *damages* need not, by itself, exceed the requisite statutory amount because the immediate financial consequences of the litigation to the plaintiff – in that case, the financial benefit of not having to pay the interest contracted to be charged – may also be considered in calculating the amount in controversy.") (emphasis in original); Rosen v. Chrysler Corp., 205 F.3d 918, 921 (6th Cir. 2000) (stating that "in cases where a plaintiff seeks to rescind a contract, the contract's entire value, without offset, is the amount in controversy."); Fitzgerald Railcar Servs. of Omaha, Inc. v. Chief Indus., Inc., No. 04-1949, 2005 WL 1154293, at *1 (8th Cir. May 17, 2005) (stating that "the value of the object of litigation is not measured simply by the amount in alleged default,…but also by the value of the lease agreement if terminated.").   See also Bolduc v. Beal Bank, SSB, 994 F. Supp. 82, 89 n. 3 (D.N.H. 1998) (in an action to prevent foreclosure on real property, the amount in controversy was measured by the value of the mortgage notes), injunctive relief denied on other grounds, 167 F.3d 667 (1999).

13.    The plaintiffs' mortgage loan principal and the finance charges payable thereunder, whether considered independently or in the aggregate, exceed $75,000.00, exclusive of interest and costs.  As such, the amount in controversy requirement of 28 U.S.C. § 1332(a) is satisfied.

14.    The Complaint also seeks monetary damages, costs and attorney's fees.  See Exhibit A (State Court Documents, Complaint, Prayer for Relief (b)(c)).  In particular, plaintiffs assert claims against Ameriquest under the Massachusetts Consumer Protection Statute, M.G.L. ch. 93A.  See Exhibit A (State Court Documents, Complaint, ¶ 61).  The Complaint alleges that Ameriquest's conduct was "willful and knowing."  See Exhibit A (State Court Documents,

Complaint, ¶ 62).  In some instances, willful and knowing conduct can subject a defendant to treble damages under Chapter 93A.  <u>See</u> M.G.L. ch. 93A § 9(3).

15.    Although Ameriquest believes the plaintiffs' claims are without merit, it cannot be declared to a legal certainty from the face of the Complaint that plaintiffs would not be entitled to recover more than $75,000, exclusive of interest and costs.  It is well-established that the amount in controversy is insufficient "only when, 'from the face of the pleadings, it is apparent, to a legal certainty, … that the plaintiff never was entitled to recover' a sum equal to, or in excess of, the jurisdictional minimum." <u>Barrett v. Lombardi</u>, 239 F.3d 23, 30 (1st Cir. 2001) (quoting <u>St. Paul Mercury Indemnity Co. v. Red Cab Co.</u>, 303 U.S. 283, 289 (1938)); <u>Spielman v. Genzyme Corp.</u>, 251 F.3d 1, 5 (1st Cir. 2001).  <u>See</u> <u>also</u> <u>Geschke v. Air Force Ass'n</u>, 425 F.3d 337, 341 (7th Cir. 2005) ("Only if it were legally impossible for [plaintiff] to win on claims totaling more than $75,000 would her suit fail for want of jurisdiction.").

16.    Because there is complete diversity of citizenship and the amount in controversy exceeds $75,000, exclusive of costs and interests, this Court has jurisdiction over the plaintiffs' claims pursuant to 28 U.S.C. § 1332.

## II.    <u>PROCEDURAL COMPLIANCE</u>

17.    In accordance with the requirements of  28 U.S.C. § 1446(b), this Notice of Removal is filed within thirty (30) days after the receipt by Ameriquest of a copy of the Complaint and Summons and Order of Notice in this case.  Thus, Ameriquest removes this matter without waiving any objections or defenses that it may have, including, without limitation, objections to sufficiency of process or sufficiency of service thereof.

18.     Pursuant to 28 U.S.C. § 1441, et seq., the right exists to remove this case from the Superior Court, Barnstable County, Massachusetts, to the United States District Court for the District of Massachusetts.

19.     Pursuant to 28 U.S.C. § 1446(a), attached hereto are true and correct copies of all process, pleadings and orders served upon Ameriquest.  See Exhibit A (State Court Documents).

20.     Pursuant to 28 U.S.C. § 1446(d), a true and correct copy of this Notice of Removal will be filed with the clerk of the Superior Court, Barnstable County, Massachusetts, as required by law, and served upon counsel for plaintiffs.

21.     Defendant Deutsche Bank, as Trustee, has consented in writing to removal of this action to the United States District Court for the District of Massachusetts.  See Consent to Removal, dated March 25, 2008, attached hereto as Exhibit B.

**WHEREFORE**, defendant Ameriquest Mortgage Company hereby removes this case from the Superior Court, Barnstable County, Massachusetts, where it is now pending, to this honorable Court, and respectfully requests that this Court accept jurisdiction of this action, and henceforth that this action be placed upon the docket of this Court for further proceedings, as though this case had originally been instituted in this Court.

Respectfully Submitted,

AMERIQUEST MORTGAGE COMPANY

By its attorneys,

/s/ Bradley C. Morin
R. Bruce Allensworth (BBO #015820)
    bruce.allensworth@klgates.com
Phoebe S. Winder (BBO #567103)
    phoebe.winder@klgates.com
Bradley C. Morin (BBO #666559)
    brad.morin@klgates.com
KIRKPATRICK & LOCKHART
    PRESTON GATES ELLIS LLP
State Street Financial Center
One Lincoln Street
Boston, MA 02111
(617) 261-3100

March 25, 2008

## CERTIFICATE OF SERVICE

I hereby certify that this **Notice of Removal** filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing and paper copies will be sent to those indicated as non registered participants on March 25, 2008.

/s/ Bradley C. Morin
Bradley C. Morin

# EXHIBIT A
# (Part 1 of 3)

# NATIONAL REGISTERED AGENTS, INC.

## SERVICE OF PROCESS SUMMARY TRANSMITTAL FORM

To:  DIANE TIBEREND, STE. 1200
AMERIQUEST MORTGAGE COMPANY
1100 TOWN & COUNTRY ROAD
SUITE 1200
ORANGE, CA 92868

SOP Transmittal # **MA21535**

(800) 767-1553 - Telephone
(609) 716-0820 - Fax

Defendant: AMERIQUEST MORTGAGE COMPANY
(Entity Served)

Enclosed herewith are legal documents received on behalf of the above captioned entity by National Registered Agents, Inc. or its Affiliate in the State of  MASSACHUSETTS  on this  6  day of  March  , 2008 . The following is a summary of the document(s) received:

1.    **Title of Action:** Joseph G. Curtis et al. v. Ameriquest Mortgage Company et al.

2.    **Document(s) served:**

| | | |
|---|---|---|
| __ Summons | __ Subpoena | __ Injunction |
| __ Complaint | __ Third Party Complaint | __ Notice of |
| __ Petition | __ Demand for Jury Trial | __ Mechanics Lien |
| __ Garnishment | __ Default Judgement | _X_ Other: Summons and Order of Notice; Tracking Order F Track; P's Ex Parte Mot for TRO to Stop Foreclosure |

3.    **Court of Jurisdiction/**     Barnstable Superior Court
**Case & Docket Number:** 2008-00175

4.    **Amount Claimed, if any:**

5.    **Method of Service** (select one):
_X_ Personally served by:    __ Process Server    _X_ Deputy Sheriff    __ U. S Marshall
__ Delivered Via:    __ Certified Mail    __ Regular Mail    __ Facsimile
(Envelope enclosed)    (Envelope enclosed)

__ Other (Explain):

6.    **Date and Time of Service:** 3/6/2008 3:53:16 PM EST (GMT -5)

7.    **Appearance/Answer Date:** 3/11/08 @ 2:00 pm / 20 days

8.    **Plaintiff's Attorney:**    Matthew Dunn, Esq.
(Name, Address & Telephone Number)    The Dunn Law Group
15 Broad Street
Suite 512
Boston, MA 02109
617-725-0033

9.    **Federal Express Airbill #** 790463768340

10.    **Call Made to:** VM - DIANE TIBEREND, STE. 1200

11.    **Special Comments:**

**NATIONAL REGISTERED AGENTS, INC.**        Copies To:

Transmitted by: Lisa Mogan

The information contained in this Summary Transmittal Form is provided by National Registered Agents, Inc. for informational purposes only and should not be considered a legal opinion. It is the responsibility of the parties receiving this form to review the legal documents forwarded and to take appropriate action.

ORIGINAL

# Commonwealth of Massachusetts
## County of Barnstable
## The Superior Court

CIVIL DOCKET# **BACV2008-00175**

Joseph G Curtis, Elizabeth Curtis, Plaintiffs

vs.

Ameriquest Mortgage Company, Deutsche Bank National Trust Company Trustee, Defendants

## SUMMONS AND ORDER OF NOTICE

To the above-named:

    You are hereby summoned and required to serve upon **Matthew J Dunn, Esquire**, plaintiff's attorney, whose address is **15 Broad Street, Suite 512 Boston, MA 02109, , **, an answer to the complaint which is herewith served upon you. This must be done within 20 days after service of this summons upon you, exclusive of the day of service. If you fail to do so, Judgment by default will be taken against you for the relief demanded in the complaint. You are also required to file your answer to the complaint in the office of the Clerk of this Court at Barnstable either before service upon plaintiff's attorney or within a reasonable time thereafter.

    Unless otherwise provided by Rule 13(a), your answer must state as a counterclaim any claim which you may have against the plaintiff which arises out of the transaction or occurrence that is the subject matter of the plaintiff's claim or you will thereafter be barred from making such claim in any other action.

    **WE ALSO NOTIFY YOU** that application has been made in said action, as appears in the complaint, for a preliminary injunction and that a hearing upon such application will be held at the court house at said Barnstable County Superior Court, in Barnstable on **03/11/2008, at 02:00 PM,** at which time you may appear and show cause why such application should not be granted.

    **Witness, Barbara J. Rouse,** Esquire, Chief Justice of the Superior Court, at Barnstable, Massachusetts this 4th day of March, 2008.

Clerk Magistrate

## (AFFIX RETURN OF SERVICE ON BACK OF SUMMONS)

Disabled Individuals who need handicap accommodations should contact the Administrative Office of the Superior Court at (617) 788-8130

3-6-08

# Commonwealth of Massachusetts
## County of Barnstable
## The Superior Court

CIVIL DOCKET # **BACV2008-00175-A**

RE:    Joseph Curtis et al v Ameriquest Mortgage Company et al
TO:

Matthew J Dunn, Esquire
15 Broad Street, Suite 512
Boston, MA 02109

### SCHEDULING ORDER FOR F TRACK

You are hereby notified that this case is on the track referenced above as per Superior Court Standing Order 1-88. The order requires that the various stages of litigation described below must be completed not later than the deadlines indicated, and case shall be resolved and judgment shall issue **12/24/2009**.

### STAGES OF LITIGATION                     DEADLINES

| STAGES OF LITIGATION | SERVED BY | FILED BY | HEARD BY |
|---|---|---|---|
| Service of process made and return filed with the Court | 06/02/2008 | 06/02/2008 | |
| Response to the complaint filed (also see MRCP 12) | | 07/02/2008 | |
| All motions under MRCP 12, 19, and 20 | 07/02/2008 | 08/01/2008 | 08/31/2008 |
| All motions under MRCP 15 | 07/02/2008 | 08/01/2008 | 08/31/2008 |
| All discovery requests and depositions served and non-expert depositions completed | 12/29/2008 | | |
| All motions under MRCP 56 | 01/28/2009 | 02/27/2009 | |
| Final pre-trial conference held and/or firm trial date set | | | 06/27/2009 |
| Case shall be resolved and judgment shall issue by **12/24/2009** | | | **12/24/2009** |

The final pre-trial deadline is **not the scheduled date of the conference.**
You will be notified of that date at a later time.
**Counsel for plaintiff must serve this tracking order on defendant before the deadline for filing return of service.**

ated: 03/04/2008

Scott W. Nickerson
Clerk of the Court

elephone: (508) 375-6684

**COMMONWEALTH OF MASSACHUSETTS**

BARNSTABLE, SS.                                   **SUPERIOR COURT**
                                                 **C.A. NO.**

|  |  |
|---|---|
| JOSEPH G. CURTIS, and ELIZABETH CURTIS, | ) ) ) ) |
| Plaintiffs, | ) ) ) |
| v. | ) ) |
| AMERIQUEST MORTGAGE CORPORATION, and DEUTSCHE BANK NATIONAL TRUST COMPANY, as TRUSTEE of AMERIQUEST MORTGAGE SECURITIES, INC. ASSET-BACKED PASS THROUGH CERTIFICATES, SERIES 2004-R10 | ) ) ) ) ) ) ) ) ) ) |
| Defendants. | ) ) ) |

**PLAINTIFFS' EX PARTE MOTION FOR A
TEMPORARY RESTRAINING ORDER TO STOP FORECLOSURE**

NOW COME the Plaintiffs in the above-entitled action and hereby move this

Honorable Court to issue a temporary restraining order pursuant to Massachusetts Rule of

Civil Procedure 65(a) prohibiting the Defendants, Ameriquest Mortgage Company

("Ameriquest") and Deutsche Bank National Trust Company, as Trustee of Ameriquest

Mortgage Securities, Inc. Asset-Backed Pass Through Certificates, Series 2004-R10

("Deutsche Bank"), and their agents, servants and attorneys from further proceeding with

the foreclosure and sale of Plaintiffs' home located at 148 Hollow Road, Cotuit

(Barnstable), MA 02635 (the "Cotuit Home") – which is currently scheduled to be sold at

auction on Friday, March 14, 2008, at 12:00 p.m.

1

In support of this Motion Plaintiffs state that unless this Court grants the temporary restraining order ("TRO") sought herein, immediate and irreparable harm will result to them in that the Defendants will foreclose on Plaintiffs' Cotuit Home and sell same at auction on March 14th. Accordingly, the balance of hardships tips decidedly in Plaintiffs favor. Absent the TRO Plaintiffs will lose (1) their home, (2) their accumulated equity in their home, and/or (3) the right to raise claims and defenses to enforcement of the Ameriquest mortgage. Defendants, on the other hand, will only be temporarily delayed in pursuing the foreclosure and sale of Plaintiffs' Cotuit Home. Furthermore, the grant of a TRO in this instance is consistent with the public interest because it will effectuate the purposes of recently enacted statutory law in that it will prevent a wrongful foreclosure and sale. *See* Exhibits "F" and "G" attached to Plaintiffs' Complaint and incorporated herein. Finally, absent injunctive relief, there is substantial likelihood that neither Ameriquest nor Deutsche Bank will conform their conduct to the newly enacted statute (i.e. provide Plaintiffs with notice of the grounds for their alleged default and opportunity to cure same) or postpone the scheduled foreclosure and sale of Plaintiffs' Cotuit Home.

This motion is made ex parte because Plaintiffs will suffer the above named harm before the adverse parties can be heard in opposition. As more particularly set forth in the Affidavit of Matthew J. Dunn, which is attached hereto and incorporated herein, Plaintiffs are informed and believe that Ameriquest and/or Deutsche Bank will imminently commence the foreclosure and sale of Plaintiffs' Cotuit Home, despite the clear rights and protections afforded to them under the new law.

The Affidavit of Matthew J. Dunn in support of this motion is attached hereto as Exhibit "A." A proposed Order is also submitted herewith.

Respectfully Submitted,
Joseph Curtis & Elizabeth Curtis,
by their attorney,

Matthew J. Dunn, BBO# 654041
The Dunn Law Group
15 Broad Street, Suite 512
Boston, MA  02109
(617) 725-0033

Dated:  March 4, 2008

COMMONWEALTH OF MASSACHUSETTS

BARNSTABLE, SS.                          SUPERIOR COURT
                                         C.A. NO.

|  |  |
|---|---|
| JOSEPH G. CURTIS, and<br>ELIZABETH CURTIS,<br><br>Plaintiffs,<br><br>v.<br><br>AMERIQUEST MORTGAGE<br>CORPORATION, and<br>DEUTSCHE BANK NATIONAL<br>TRUST COMPANY, as TRUSTEE<br>of AMERIQUEST MORTGAGE<br>SECURITIES, INC. ASSET-BACKED<br>PASS THROUGH CERTIFICATES,<br>SERIES 2004-R10<br><br>Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

## AFFIDAVIT OF MATTHEW J. DUNN IN SUPPORT OF PLAINTIFFS' MOTION FOR AN EX PARTE TEMPORARY RESTRAINING ORDER TO STOP FORECLOSURE

I, Matthew J. Dunn, being duly sworn and competent to testify to the matters stated herein, depose and say upon my own personal knowledge and belief:

1.    I am Plaintiffs' attorney in the above-captioned action.

2.    In my role as counsel for Plaintiffs, I have personal knowledge as to the procedures followed by the Defendants, Ameriquest Mortgage Company ("Ameriquest") and Deutsche Bank National Trust Company, as Trustee of Ameriquest Mortgage Securities, Inc. Asset-Backed Pass Through Certificates, Series 2004-R10 ("Deutsche Bank") to foreclose upon and sell Plaintiffs' home located at 148 Hollow Road, Cotuit (Barnstable), MA 02635 (the "Cotuit Home") on Friday, March 14, 2008, at 12:00 p.m.

1

A true and accurate copy of Defendants' "Notice of Foreclosure Sale" is attached to Plaintiffs' Complaint as Exhibit "A."

3.     Based on my own personal knowledge of such procedures in this case, the Defendants have failed to provide Plaintiffs with (1) notice and grounds for their alleged default, or (2) the opportunity to cure the alleged default as required under the newly enacted statute (*see* Exhibits "F" and "G" to Plaintiffs' Complaint – which I attest is a true and accurate reproduction of said statute).

4.     Accordingly, good cause exists to temporarily and/or permanently enjoin the Defendants' scheduled foreclosure and sale of Plaintiffs' Cotuit Home until such time as the Defendants conform their conduct to said statute and provide Plaintiffs with the above-described notice and opportunity to cure.

5.     This affidavit is offered in good faith and is not submitted solely for delay.

Subscribed and sworn under the pains and penalties of perjury this 4th day of March 2008.

Matthew J. Dunn

COMMONWEALTH OF MASSACHUSETTS

BARNSTABLE, SS.

SUPERIOR COURT
C.A. NO.

|  |  |
|---|---|
| JOSEPH G. CURTIS, and ELIZABETH CURTIS,<br><br>Plaintiffs,<br><br>v.<br><br>AMERIQUEST MORTGAGE CORPORATION, and DEUTSCHE BANK NATIONAL TRUST COMPANY, as TRUSTEE of AMERIQUEST MORTGAGE SECURITIES, INC. ASSET-BACKED PASS THROUGH CERTIFICATES, SERIES 2004-R10<br><br>Defendants. | ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) |

## TEMPORARY RESTRAINING ORDER

Plaintiffs, having moved ex parte for a Temporary Restraining Order pursuant to Mass.R.Civ.P. 65(a), and this Court being satisfied that irreparable and immediate harm will result to Plaintiffs unless this order is granted, it is

ORDERED that the Defendants, Ameriquest Mortgage Company ("Ameriquest") and Deutsche Bank National Trust Company, as Trustee of Ameriquest Mortgage Securities, Inc. Asset-Backed Pass Through Certificates, Series 2004-R10 ("Deutsche Bank"), their agents, servants and attorneys refrain from any further proceeding in the foreclosure and sale of Plaintiffs' property located at 148 Hollow Road, Cotuit (Barnstable), MA 02635 – including, but not limited to the sale by auction of said property on Friday, March 14, 2008, at 12:00 p.m.

1

This order has been entered at _____ [Time] _____[AM/PM] on March ___, 2008.

For good cause shown, the Court orders that Plaintiff is not required to give security for the issuance of this Temporary Restraining Order.

This Order expires on _____200___, unless extended by further order of the court.


Dated:

_____, J.

COMMONWEALTH OF MASSACHUSETTS

BARNSTABLE, SS.

SUPERIOR COURT
C.A. NO.

| | |
|---|---|
| JOSEPH G. CURTIS, and<br>ELIZABETH CURTIS,<br><br>Plaintiffs,<br><br>v.<br><br>AMERIQUEST MORTGAGE<br>CORPORATION, and<br>DEUTSCHE BANK NATIONAL<br>TRUST COMPANY, as TRUSTEE<br>of AMERIQUEST MORTGAGE<br>SECURITIES, INC. ASSET-BACKED<br>PASS THROUGH CERTIFICATES,<br>SERIES 2004-R10<br><br>Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | **COMPLAINT SEEKING<br>DAMAGES AND EQUITABLE<br>RELIEF INCLUDING<br>INJUNCTIVE RELIEF TO<br>STOP FORECLOSURE** |

## I.    PRELIMINARY STATEMENT

1.    This is an action brought by two Cotuit homeowners ("Plaintiffs") against their

lender, Ameriquest Mortgage Company ("Ameriquest").  As is more fully set forth

herein, Ameriquest used deceit and misrepresentation to induce the Plaintiffs to enter into

a residential mortgage loan with unfair financial benefits to Ameriquest and hidden costs

to the Plaintiffs.  In doing so, Ameriquest violated the consumer protection statute

M.G.L. e. 93A ("Chapter 93A"), together with that law's implementing regulations,

including 940 CM.R. §§ 3.01 *et seq.*, 6.01 *et seq.*, and 8.01 *et seq.*, as well as the common

law.

2.    Plaintiffs entered into a loan with Ameriquest that is fully secured by equity in

their residence. The loan is characterized by high points and fees, a high interest rate and

1

a substantial prepayment penalty. In this transaction, Ameriquest employed a bait and switch tactic by which it misrepresented and failed to fully disclose important aspects of the loan terms. Plaintiffs ultimately received a loan which, to their surprise, contained the following disadvantageous terms:

(a)     A confusing variable interest rate structure in which the original note rate could only increase, but not decrease;

(b)     A large number of "discount points" constituting thousands of dollars added to the principal of the loan even though Ameriquest provided no "discount" in the transactions; and

(c)     A prepayment penalty in the maximum amount allowed by law, thereby discouraging the Plaintiffs from refinancing on better terms with other lenders.

4.     The consequence of Ameriquest's practices, taken as a whole, is to allow Ameriquest to profit by leaving Plaintiffs with a three-way Hobson's choice. Either the Plaintiffs could (1) choose to remain in the Ameriquest loan with unacceptable terms and face foreclosure, (2) find another lender offering better terms and pay Ameriquest a substantial and unjustified prepayment penalty, or (3) refinance with Ameriquest, and thereby provide Ameriquest with an opportunity to capitalize the points and closing costs from the first loan while charging another set of points and/or closing costs in an equal or larger amount.

5.     Deutsche Bank, as trustee, has begun foreclosure proceedings on behalf of a securitization trust. There is currently a foreclosure sale date set on Mr. & Mrs. Curtis' property for March 14, 2008.

6.     A true and correct copy of the Legal Notice sent to Mr. & Mrs. Curtis informing them of the foreclosure is attached as Exhibit A.

7.     Plaintiffs seek monetary against Ameriquest, and declaratory and injunctive relief from this Court preventing Deutsche Bank's foreclosure sale of Plaintiff's Cotuit Home.

## II.    JURISDICTION AND VENUE

8.    This Court has jurisdiction over this matter and this Defendant pursuant to M.G.L.c. 223A, §3, c. 212, §4 and c. 214, §1.

9.    Venue lies in this county pursuant to M.G.L.c. 223, §8.

## III.    PARTIES

10.    Plaintiffs, Joseph G. Curtis and Elizabeth Curtis ("Mr. & Mrs. Curtis"), are individuals who reside at 148 Hollow Road, Cotuit (Barnstable), MA 02635 (the "Cotuit Home").

11.    Defendant Ameriquest Mortgage Company ("Ameriquest") is a Delaware corporation whose principal place of business is 1100 Town & County Road, Orange, CA 92000.

12.    Ameriquest does business from various locations in Massachusetts, including without limitation, 275 Martine Street, Suite 108, Fall River in Bristol County, Massachusetts 22039.

13.    Ameriquest's business includes making and refinancing consumer loans secured by residential property.

14.    At all times relevant to this Complaint, Ameriquest regularly extended consumer credit payable by written agreement in more than four installments or for which a finance charge is imposed.

15.    Defendant Deutsche Bank National Trust Company, as Trustee of Ameriquest Mortgage Securities, Inc. Asset-Backed Pass Through Certificates, Series 2004-R10 ("Deutsche Bank") has a principal place of business located at 1761 East Street, Andrew Place, Santa Anna, California 92705.

3

## IV.    FACTS

16.    Mr. & Mrs. Curtis are unsophisticated consumers with little experience in mortgage financing. They own the Cotuit Home.

17.    In the Fall of 2004, an Ameriquest representative named "John" contacted Mr. Curtis by telephone on five (5) separate occasions and solicited him to refinance with Ameriquest in order to pay off his existing mortgage with Cape Cod Cooperative Bank and to consolidate some of the couple's other debts.

18.    Based on their discussions with Ameriquest, Mr. & Mrs. Curtis understood that they were applying for a 9.7% fixed rate loan. The Ameriquest representative never provided Mr. & Mrs. Curtis with any information regarding settlement charges or fees, and did not mention the prospect of a prepayment penalty prior to closing.

19.    Rather, the Ameriquest representative assured Mr. & Mrs. Curtis that they could refinance within twelve (12) months of the closing and obtain a lower, fixed-rate mortgage of 7%-8%.

19.    On or about November 5, 2004, an attorney appeared at Mr. Curtis' business office. This individual presented Mr. & Mrs. Curtis with a closing package that included a note and mortgage on terms that were materially different from those previously presented by the Ameriquest representative. Unbeknownst to Mr.& Mrs. Curtis, this note and mortgage contained an adjustable, rather than fixed rate, and the loan terms included a prepayment penalty – which never been previously discussed with Mr.& Mrs. Curtis.

20.    The November 5, 2004 loan Settlement Statement shows that a "loan discount fee" of 4.275% ($19,878.75) was paid to Ameriquest Mortgage Company.

4

21.    Based on the substantial amount of this fee, Mr. & Mrs. Curtis believe and therefore aver that they were not provided with a "discount" of any kind on the rate in the transaction.

22.    Furthermore, Mr. & Mrs. Curtis were never offered an alternative loan with a higher rate that did not involve payment of discount points. Therefore, they had no opportunity to evaluate whether the "discount" would be advantageous to them.

23.    In addition, the Ameriquest loan contains a "one-way" variable rate provision under which the rate in the transaction can increase from the initial rate disclosed in the loan note to Mr. & Mrs. Curtis, but can never decrease below that rate.

24.    Mr. & Mrs. Curtis did not understand the variable rate associated with their loan until many months after their transaction.

25.    In May of 2007, Mr. & Mrs. Curtis were notified by Ameriquest that they were in arrears of their mortgage payments without any explanation as to how, why or in what amount.

26.    Following their receipt of this notification, Mr. & Mrs. Curtis attempted to contact Ameriquest on several occasion to inquire about and possibly cure any alleged deficiency in their mortgage payments.

27.    Despite these repeated efforts, Ameriquest and its representative wholly failed to provide Mr. & Mrs. Curtis with any explanation or opportunity to remedy the alleged deficiency.

28.    On or about August 21, 2007, counsel for Deutsche Bank, the purported holder of Mr. & Mrs. Curtis' note and mortgage with Ameriquest, wrote to Mr. & Mrs. Curtis to inform them – without further explanation – that they were "presently in default under the

terms of your Note and Mortgage secured by the property referenced above (the Cotuit

Home). Specifically, you have failed to make payments on this note as agreed." A copy

of counsel's letter to Mr. & Mrs. Curtis, dated August 21, 2007, is attached hereto as

Exhibit "B." This correspondence also indicated that Deutsche Bank had chosen to

invoke the power of sale contained in the mortgage and that it would commence

foreclosure proceedings against Mr. & Mrs. Curtis. *See* Exhibit "B."

29.     On September 26, 2007, Mr. Curtis wrote to counsel for Deutsche Bank

requesting information supporting the allegations contained in his August 21st

correspondence and Deutsche Bank's decision to seek to foreclose on the Cotuit Home.

A copy of Mr. Curtis' September 26th letter is attached hereto as Exhibit "C."

30.     On or about October 16, 2007, Diane L. Lawton, Managing Attorney in the

Massachusetts Attorney General's Consumer Protection Division, wrote to Mr. Curtis in

response to his request that the Attorney General's office inquire with Ameriquest as to

the nature of their claim that he and his wife were in default under the terms of their

mortgage with Ameriquest. A copy of Ms. Lawton's letter to Mr. Cutis, dated October

16, 2007, is attached hereto as Exhibit "D." In essence, Ms. Lawton indicated that

Ameriquest claimed that Mr. & Mrs. Curtis were delinquent in a single mortgage

payment (in May 2007) and that two checks that they had submitted as payment on their

mortgage had been returned by Ameriquest for being "insufficient." *See* Exhibit "D."

31.     Mr. & Mrs. Curtis have made each and every payment owed under their

Ameriquest mortgage timely and in full.

32.     On or about January 22, 2008, Mr. & Mrs. Curtis received notice from the

Massachusetts Land Court that Deutsche Bank had filed a complaint with said court for

authority to foreclose on their Cotuit Home. A copy of the Land Court's notice is attached hereto as Exhibit "E."

33.    On or about February 7, 2008, Mr. & Mrs. Curtis received a "Notice of Foreclosure Sale," which provided them with notice of Deutsche Bank's intent to conduct a foreclosure sale of their Cotuit Home on March 14, 2008 at 12:00 pm by public auction. A copy of said Notice is attached hereto as Exhibit "A."

34.    On information and belief, Deutsche Bank does not hold any interest in the mortgage because it has not received assignment from the mortgagee. No assignment to Deutsche Bank appears of record in the Barnstable County Registry of Deeds.

35.    Deutsche Bank lacks authority to act under the power of sale.

36.    Mr. & Mrs. Curtis would like to refinance with another lender, but have not meaningfully explored that option because of the prepayment penalty associated with the Ameriquest loan.

37.    Mr. & Mrs. Curtis also now understand that the thousands of dollars in points and closing costs that they paid in connection with their Ameriquest loan effectively acts as an additional *de facto* prepayment penalty if they refinance early, even if that refinancing is with Ameriquest. Since the points and closing costs are treated as earned when the loan is made, they drive up the effective rate on the original loan if the loan is repaid in a shorter period than its expected term. In addition, by refinancing the points, Mr. & Mrs. Curtis would be required to pay interest on the points in connection with the refinanced loan.

### *Emergency Legislation Governing Foreclosure Proceedings*

38.     On November 30, 2007, Governor Patrick signed emergency legislation to assist

borrowers facing foreclosure and to provide special protection for sub-prime

borrowers.

39.     A true and correct copy of the legislation is attached hereto as Exhibit "F."

40.     A true and correct copy of the press release announcing the enactment is attached

hereto as Exhibit "G."

41.     Section 11 of the legislation provides as follows:

SECTION 11. Said Chapter 244 is hereby further amended by inserting after

section 35 the following section: -

Section 35A. (a) Any mortgagor of residential real property located in the
Commonwealth consisting of a dwelling house with accommodations for 4 or less
separate households and occupied in whole or in part by the mortgagor, shall have
a 90 day right to cure a default of a required payment as provided in such
residential mortgage or note secured by such residential real property by full
payment of all amounts that are due without acceleration of the maturity of the
unpaid balance of such mortgage. The right to cure a default of a required
payment shall be granted once during any 5 year period, regardless of the
mortgage holder.

(b) The mortgagee, or anyone holding thereunder, shall not accelerate maturity of
the unpaid balance of such mortgage obligation or otherwise enforce the mortgage
because of a default consisting of the mortgagor's failure to make any such
payment in subsection (a) by any method authorized by this chapter or any other
law until at least 90 days after the date a written notice is given by the mortgagee
to the mortgagor.

Said notice shall be deemed to be delivered to the mortgagor when delivered to
the mortgagor or when mailed to the mortgagor at the mortgagor's address last
known to the mortgagee or anyone holding thereunder.

42.     Section 21 of the legislation makes Section 11 effective as of *May 1, 2007*,

- a retroactive effect consistent with the Legislature's emergency preamble.

43.     The Cotuit Home, the property in question, is a residential real property located in the Commonwealth consisting of a dwelling house with accommodations for 4 or less separate households and is occupied in whole or in part by the mortgagor.

44.     Section 11(c) of the legislation requires notices to borrowers containing information about the nature of the delinquency, together with a 90-day right to cure.

45.     Mr. & Mrs. Curtis have not received a notice that conforms to the requirements of the law.

46.     The law prohibits the mortgagee or anyone holding under the mortgage from foreclosing until no less than 90 days after the notice is sent.

47.     Mr. & Mrs. Curtis have not had 90 days to cure as required by the law.

48.     On February 27, 2008, Plaintiff, by counsel, contacted foreclosure counsel for Deutsche Bank to request a temporary delay of foreclosure to address the requirements of the new law and/or to permit this matter to be heard.  The request was never acknowledged by the foreclosure counsel for Deutsche Bank.

## COUNT I - PRELMINARY AND PERMANENT INJUNCTIVE RELIEF
### (Against Ameriquest and Deutsche Bank)

49.     Mr. & Mrs. Curtis repeat and re-allege all paragraphs above as if set forth fully herein.

50.     On information and belief, Deutsche Dank does not have the right to act pursuant to the power of sale because it is not an assignee of the mortgagee.

51.     On information and belief, the Legal Notice provided to Mr. & Mrs. Curtis pursuant to G.L. c. 244, § 14 is not valid because at the time it was sent Deutsche Bank was not an assignee of the mortgagee and had no power to act on behalf of the mortgagee under the statute.

52.    Deutsche Bank cannot conduct a valid sale of the Cotuit Home under Massachusetts' law.

53.    Furthermore, neither Deutsche Bank, nor any party acting on its behalf, sent the notice required by the statute attached as Exhibit F and described more fully in Paragraphs Nos. 38 to 42 above.

54.    In addition, neither Deutsche Bank, nor any party acting on its behalf, has ever provided Mr. & Mrs. Curtis with an opportunity to cure the alleged delinquency.

55.    Absent the required notice and opportunity to cure, Deutsche Bank cannot enforce the power of sale.

56.    Deutsche Bank's foreclosure, if allowed to proceed, would cause Mr. & Mrs. Curtis irreparable harm.

57.    The balance of hardships tips decidedly in favor of Mr. & Mrs. Curtis because absent injunctive relief they will lose their home and may lose accumulated equity and/or the right to raise claims and defenses to enforcement of the Ameriquest mortgage as set forth hereunder.

58.    Preliminary and permanent injunctive relief is consistent with the public interest, because it will prevent a wrongful foreclosure and because it effectuates the purposes of recently enacted statutory law.

59.    Absent injunctive relief, there is substantial likelihood that neither Ameriquest nor Deutsche Bank will conform its conduct to the law.

### COUNT II - VIOLATION OF CHAPTER 93A AND ITS IMPLEMENTING REGULATIONS
### (As Against Ameriquest)

60.    Mr. & Mrs. Curtis repeat and re-allege all paragraphs above as if set forth

10

fully herein.

61.    Ameriquest has violated G.L. c. 93A § 2 with respect to Mr.& Mrs. Curtis'

loan by utilizing terms and practices that were unfair, deceptive, and/or

unconscionable.  The violations Ameriquest engaged in included, without limitation:

      (a)    Employing a bait and switch strategy by offering Mr. & Mrs.
Curtis a mortgage on favorable terms prior to closing and then
offering a different mortgage loan product at closing in
violation of 940 C.M.R. §§ 8.04(4) and 8.06(1) and c. 93A § 2;

      (b)    Promising to refinance Mr. & Mrs. Curtis mortgages on more
favorable terms within twelve (12) months to induce them to
close their loan with Ameriquest in violation of 940 C.M.R. §
8.06(1) and c. 93A §2;

      (c)    Implying that Mr. & Mrs. Curtis were being given a loan
"discount," but failing to provide any such discount to them in
violation of 940 C.M.R. §§3.04,3.05,3.13, and 6.05 and c. 93A
§2;

      (d)    Using a prepayment penalty to trap Mr. & Mrs. Curtis into
foregoing better loan terms from other lenders and/or to
encourage them to refinance on disadvantageous terms with
Ameriquest;

      (e)    Providing confusing variable rate provisions in its loans
designed to protect Ameriquest if rates increase from those in
place when the loan was made without providing a benefit to
Mr. & Mrs. Curtis when rates decline;

      (f)    Failing to make disclosures that comply with 940 C.M.R. §8,
or, in the alternative as mandated by G.L. c. 184 § 17D which
required disclosure of settlement costs and related information;

      (g)    Failing to make disclosures that comply with and 209 C.M.R.
§ 32.18; and

      (h)    Failing to make disclosures that comply with and 209 C.M.R.
§ 32.19(2).

# EXHIBIT A

# (Part 2 of 3)

62.    Ameriquest's conduct was willful or knowing within the meaning of M.G.L. c. 93A, §2.

63.    Mr. & Mrs. Curtis were injured and suffered damages by virtue of Ameriquest's violations.

64.    The demand letter requirement under c. 93A §9 does not apply to Mr. & Mrs. Curtis because they are asserting their claims defensively against Ameriquest to prevent the foreclosure action.

## COUNT III - CLAIMS FOR UNCONSCIONABILITY AND/OR ILLEGALITY
### (Against Ameriquest)

65.    Mr. & Mrs. Curtis repeat and re-allege all paragraphs above as if set forth fully herein.

66.    Contract terms that violate either a statute or a validly enacted regulation are void as against public policy.

67.    Contract terms that violate either a statute or a validly enacted regulation are unconscionable and unenforceable.

68.    The terms of the Ameriquest loan violate the Attorney General's regulations, 940 C.M.R. §§3.01 *et seq.*, 6.01 *et seq.*, 8.01 *et seq.*, and M.G.L. c. 183 §28C.

69.    To accomplish the purposes of the Attorney General's regulations, 940 CM.R §§3.01 *et seq.*, 6.01 *et seq.*, 8.01 *et seq.*, which are to protect borrowers from "predatory lending," it is necessary to void the Ameriquest mortgage.

70.    The extent of Ameriquest's illegal behavior is extreme enough to warrant voiding the mortgage.

71.    There is a strong public policy underlying the Attorney General's

regulations, 940 C.M.R. §§3.01 *et seq.*, 6.01 el seq. and 8.01 *et seq.*, which is to protect borrowers from predatory lending and to help borrowers avoid foreclosure.

72.    The effectuation of the public policies underlying the Attorney General's regulations, 940 C.M.R §§3.01 *et seq.*, 6.01 *et seq.*, and 8.01 *et seq.*, would be defeated absent a sanction that voids the mortgage.

73.    Mr. & Mrs. Curtis are entitled to relief from the unconscionable and/or illegal contract terms, including but not limited to cancellation of the Ameriquest loan contract.

## COUNT IV - BREACH OF CONTRACT
### (As Ameriquest)

74.    Mr. & Mrs. Curtis repeat and re-allege all paragraphs above as if set forth fully herein.

75.    Ameriquest offered Mr. & Mrs. Curtis different terms in its oral and written preliminary disclosures than the ones it offered at closing.

76.    To the extent that Ameriquest offered terms to Mr. & Mrs. Curtis prior to closing, Ameriquest formed a contract with Mr. & Mrs. Curtis to provide those promised terms.

77.    Promised terms included, without limitation: a lower fixed interest rate, lower monthly payments, lower settlement costs, and no prepayment penalty.

78.    By delivering different terms at closing than the ones initially promised, Ameriquest breached its contract with Mr. & Mrs. Curtis.

79.    Ameriquest's conduct caused Mr. & Mrs. Curtis irreparable harm including, without limitation, increasing the amount of monthly payments owed to unaffordable levels thereby putting them at imminent risk of foreclosure, as well as by discouraging

Mr. & Mrs. Curtis from refinancing at more affordable rates through its imposition of undisclosed/unjustified loan discount fees in conjunction with a prepayment penalty.

80.     Ameriquest's conduct increased the cost of the loan to Mr. & Mrs. Curtis.

81.     Mr. & Mrs. Curtis are entitled to damages and equitable remedies for the Ameriquest's breach of contract.

## COUNT V - INTENTIONAL MISREPRESENTATION
### (As Ameriquest)

82.     Mr. & Mrs. Curtis repeat and re-allege all paragraphs above as if set forth fully herein.

83.     Ameriquest made misrepresentations to Mr. & Mrs. Curtis, which Mr. & Mrs. Curtis relied upon to their detriment.

84.     Ameriquest's misrepresentations included, without limitation:

> (a)     making preliminary oral and written disclosures pertaining to the interest rate, monthly payments, settlement charges and other loan terms which differed significantly from the final loan terms offered;
>
> (b)     promising a discounted rate in connection with payment of "discount points" without providing said discount; and
>
> (c)     making assurances of prompt refinancing at better terms.

85.     Ameriquest made these misrepresentations to induce Mr. & Mrs. Curtis to enter into a refinancing agreement with it.

86.     Mr. & Mrs. Curtis were induced to enter into a refinancing agreement with Ameriquest and suffered damages as a result.

87.     Ameriquest's practices caused Mr. & Mrs. Curtis harm including, without

limitation, increasing the amount of monthly payments owed to an unaffordable level thereby putting Mr. & Mrs. Curtis at imminent risk of foreclosure, and preventing Mr. & Mrs. Curtis from refinancing with other lenders to obtain more favorable terms through its imposition of undisclosed/unjustified points and a prepayment penalty.

88.     Mr. & Mrs. Curtis are entitled to damages and equitable remedies for intentional misrepresentation.

### COUNT VI - UNJUST ENRICHMENT
### (As Ameriquest)

89.     Mr. & Mrs. Curtis repeat and re-allege all paragraphs above as if set forth fully herein.

90.     By its wrongful acts and omissions, including but not limited to making a predatory and unfair mortgage loan to Mr. & Mrs. Curtis as described herein, Ameriquest has been unjustly enriched at their expense, and thus Mr. & Mrs. Curtis have been unjustly deprived.

91.     By reason of the foregoing, Mr. & Mrs. Curtis seek restitution from Ameriquest, and an order of this Court disgorging all profits, benefits, and other compensation obtained by Ameriquest from its wrongful conduct.

### REQUESTED RELIEF

**WHEREFORE**, Mr. & Mrs. Curtis respectfully requests that this honorable Court:

(a)     provide preliminary and permanent injunctive relief to prevent the March 14, 2008, foreclosure sale of the Cotuit Home;

(b)     award damages pursuant to M.G.L. c. 93A;

(c)     award Mr. & Mrs. Curtis their reasonable attorneys' fees and costs; and

(d)          grant such other relief as the Court deems just and appropriate.


Respectfully Submitted,
Joseph Curtis & Elizabeth Curtis,
by their attorney,

Matthew J. Dunn, BBO# 654041
The Dunn Law Group
15 Broad Street, Suite 512
Boston, MA  02109
(617) 725-0033

Dated:  March 4, 2008


**<u>JURY DEMAND</u>**

Plaintiffs demand trial by jury.

Matthew J. Dunn

# EXHIBIT
## "A"

**ABLITT & CHARLTON, P.C.**
92 Montvale Avenue, Suite 2950
Stoneham, Massachusetts 02180
Telephone: (781) 246-8995
Fax: (781) 246-8994

BY CERTIFIED AND REGULAR MAIL

02/05/2008

Jospeh Curtis
c/o The Dunn Law Group
Matthew J. Dunn, Esquire
Attornet at Law
15 Broad Street, 5th Floor
Boston, MA  02109
4.2209/ Curtis

### NOTICE OF MORTGAGE FORECLOSURE SALE

Re:     Deutsche Bank National Trust Company, As Trustee of Ameriquest Mortgage
        Securities, Inc. Asset-Backed Pass Through Certificates Series 2004-R10, under
        the Pooling and Servicing Agreement dated as of October 1, 2004, Without
        Recourse/ Joseph G. Curtis and Elizabeth Curtis

        Property Address: 148 Hollow Road, Cotuit (Barnstable), MA

Dear Sir or Madam:

Pursuant to M.G.L. c. 244 sec. 14, as amended, enclosed is a copy of the Notice of
Mortgagee's Sale of Real Estate.

This notice is provided to you because an examination of the record title shows that you
held an interest of record in the property thirty (30) days prior to the sale.

Cordially,

Present holder of mortgage
By its Attorney,

John S. McNicholas, Esq.
4.2209/ Curtis
CERTIFIED MAIL NO. 7007 3020 0000 4320 7258
RETURN RECEIPT REQUESTED

<u>NOTICE OF MORTGAGEE'S SALE OF REAL ESTATE</u>

By virtue and in execution of the Power of Sale contained in a certain mortgage given by Joseph G. Curtis and Elizabeth Curtis to Ameriquest Mortgage Company, dated November 5, 2004 and recorded with the Barnstable County Registry of Deeds in Book 19256, Page 179 of which mortgage Deutsche Bank National Trust Company, As Trustee of Ameriquest Mortgage Securities, Inc. Asset-Backed Pass Through Certificates Series 2004-R10, under the Pooling and Servicing Agreement dated as of October 1, 2004, Without Recourse is the present holder, for breach of the conditions of said mortgage and for the purpose of foreclosing, the same will be sold at Public Auction at 12:00 PM on March 14, 2008, on the mortgaged premises located at 148 Hollow Road, Cotuit (Barnstable), MA 02635, all and singular the premises described in said mortgage,

<u>TO WIT</u>:

The land on Hollow Road, situated in that part of Barnstable know as Santuit, bounded and described as follows:

PARCEL 2

Shown as Lot 2 on a "Plan of Land in Barnstable (Marstons Mills), Massachusetts," by Baxter & Nye, Inc., dated May 14, 1980, and recorded with the Barnstable Registry of Deeds in Plan Book 348, page 98.

Subject to and with the benefit of all rights, restrictions and easements of record, insofar as the same are still in force and applicable.

For mortgagor's title see deed recorded with the Barnstable County Registry of Deeds in Book 7235, Page 246.

These premises will be sold and conveyed subject to and with the benefit of all rights, rights of way, restrictions, easements, right of ways, covenants, liens or claims in the nature of liens, improvements, public assessments, any and all unpaid taxes, tax titles, tax liens, water and sewer liens and any other municipal assessments or liens or existing encumbrances of record which are in force and are applicable, having priority over said mortgage, whether or not reference

EXHIBIT
"B"

**ABLITT & CHARLTON, P.C.**
92 Montvale Avenue, Suite 2950
Stoneham, Massachusetts 02180
Telephone: (781) 246-8995
Fax: (781) 246-8994

MAIL BY REGULAR & CERTIFIED MAIL

08/21/2007

Joseph G. Curtis
148 Hollow Road
Cotuit (Barnstable), MA 02635
4.2209/ Curtis

RE:    Mortgage on 148 Hollow Road, Cotuit (Barnstable), MA 02635
       Mortgage from Joseph G. Curtis and Elizabeth Curtis to Ameriquest Mortgage
       Company in the original principal amount of $465,000.00

### NOTICE OF MORTGAGE DEFAULT AND INTENT TO FORECLOSE
### AND OF DEFICIENCY AFTER FORECLOSURE
### (Ch. 244 SEC. 17B)

Dear Joseph G. Curtis:

Ablitt & Charlton, PC has been retained to represent the holder of the Note and Mortgage on the above referenced property. Our client has informed us that you are presently in default under the terms of your Note and Mortgage secured by the property referenced above. Specifically, you have failed to make payments on this note as agreed.

Our client has requested that we invoke the STATUTORY POWER OF SALE contained in the mortgage and commence foreclosure proceedings. You have certain rights, including the right to reinstate and the right to bring court action to assert the nonexistence of default or any other defense you may have to the proposed acceleration and sale. WE ADVISE THAT YOU SEEK THE ASSISTANCE OF COUNSEL. Again, at any time after acceleration and before the sale of the property you have the right to reinstate or payoff your loan. Our client also reserves its right, if not precluded by applicable bankruptcy laws, to pursue a deficiency action after foreclosure.

If you need any information regarding your loan, you may contact our office at (781) 246-8995.

Sincerely,

John McNicholas, Esquire
4.2209/ Curtis

CERTIFIED MAIL NO. 70062760000031672940

# EXHIBIT
## "C"

Mr. John McNicholas, Esq.
92 Montvale Avenue Suite 2950
Stoneham, Massachusetts 02180

September 26, 2007

Dear Mr. McNicholas:

    I am in receipt of a letter from you advising me of a foreclosure. Last year I also received a letter from Ameriquest that they were going to foreclose, at which time I certified a letter to them requesting why a foreclosure since I have been paying all obligations on time and have not been late.

    Once again I must request from you the details for such foreclosure since I have been making all payments on time from the beginning of the contract.

Sincerely,

Joseph Curtis
PO Box 152
Cotuit, Massachusetts 02635

# EXHIBIT
## "D"



# THE COMMONWEALTH OF MASSACHUSETTS
## OFFICE OF THE ATTORNEY GENERAL
### ONE ASHBURTON PLACE
### BOSTON, MASSACHUSETTS 02108

MARTHA COAKLEY
ATTORNEY GENERAL

(617) 727-2200
www.ago.state.ma.us

October 16, 2007

Mr. Joseph G. Curtis
P.O. Box 152
Cotuit, MA 02635

Dear Mr. Curtis:

The Office of the Attorney General has received your letter dated September 29, 2007, concerning your loan with Ameriquest. We have contacted Ameriquest on your behalf, and we have been informed, on October 15, 2007 that:

> Our records show that Mr. Curtis has been delinquent in his payments and is currently due for 5/1/07.
>
> On 8/17/07, a payment of $4,637.99 was returned for being insufficient; and on 9/17/07, a check in the amount of $4,637.99 was returned. As a result, foreclosure proceedings have begun.

We have also been informed that the letter to you from Ameriquest saying you should review your initial transaction to see if you could exercise rescission rights was sent to all Ameriquest consumers as an order of the court in the case, but that Ameriquest has reviewed its files and states that you were given the applicable notices at the time of the loan.

Ameriquest, as it has rejected your payments for being insufficient, is therefore moving forward with the foreclosure. If you have any additional information you would like to bring to our attention so that we may notify Ameriquest—now Citi—please contact me at (617) 727-2200, ext. 2982.

Sincerely,

Diane L. Lawton
Managing Attorney
Consumer Protection Division

EXHIBIT
"E"

JAN-17-2008 THU 04:05 PM                     FAX NO.                        P. 02

A TRUE COPY ATTEST

(SEAL)               COMMONWEALTH OF MASSACHUSETTS
                              LAND COURT
                  DEPARTMENT OF THE TRIAL COURT
                                                          DEPUTY RECORDER

**TO:**                                              **CASE NO. 356662**

Joseph G. Curtis and Elizabeth Curtis


and to all persons entitled to the benefit of the Servicemembers Civil Relief Act,

Deutsche Bank National Trust Company, As Trustee of Ameriquest Mortgage Securities, Inc. Asset-Backed Pass Through Certificates Series 2004-R10, under the Pooling and Servicing Agreement dated as of October 1, 2004, Without Recourse

claiming to be the holder of a            Mortgage
covering real                             property in Cotuit (Barnstable)
                                          numbered 148 Hollow Road


given by Joseph G. Curtis and Elizabeth Curtis to Ameriquest Mortgage Company dated November 5, 2004, and recorded with the Barnstable County Registry of Deeds at Book 19256, Page 179, and now held by Plaintiff by assignment


have filed with said court a complaint for authority to foreclose said mortgage

in the manner following: by entry and possession and exercise of power of sale.

If you are entitled to the benefits of the Servicemembers Civil Relief Act and you object to such foreclosure you or your attorney should file a written appearance and answer in said court at Boston on or before *February 12, 2008*


or you may be forever barred from claiming that such foreclosure is invalid under said act.
Witness, KARYN F. SCHEIER, Chief Justice of said Court on   JAN 1 6 2008


Attest: _

                                             **DEBORAH J. PATTERSON**
                                                   **RECORDER**

                    A TRUE COPY
                    ATTEST:
                    *Deborah J. Patterson*
                        RECORDER

c.2008 Curtis

# EXHIBIT
## "F"

# HOUSE . . . . . . . No. 4387

## The Commonwealth of Massachusetts

HOUSE OF REPRESENTATIVES, November 20, 2007.

The committee of Conference on the disagreeing votes of the two branches with reference to the Senate amendments (striking out all after the enacting clause and inserting in place thereof the text contained in Senate document numbered 2382) of the House Bill relative to protecting and preserving home ownership (House, No. 4306, amended), reports the accompanying bill (House, No. 4387).

2                         HOUSE — No. 4387                    [November

## The Commonwealth of Massachusetts

In the Year Two Thousand and Seven.

AN ACT PROTECTING AND PRESERVING HOME OWNERSHIP.

1     *Whereas*, The deferred operation of this act would tend to
2  defeat its purpose, which is to provide forthwith mortgage protec-
3  tion for existing and new home owners, therefore it is hereby
4  declared to be an emergency law, necessary for the immediate
5  preservation of the public convenience.

*Be it enacted by the Senate and House of Representatives in General
Court assembled, and by the authority of the same, as follows:*

1     SECTION 1. To provide for certain unanticipated obligations of
2  the Commonwealth, to provide for an alteration of purpose for
3  current appropriations and to meet certain requirements of law, the
4  sums set forth in this section are hereby appropriated from the
5  General Fund unless specifically designated otherwise in this
6  section for the several purposes and subject to the conditions
7  specified in this section, and subject to the laws regulating the dis-
8  bursement of public funds for the fiscal year ending June 30,
9  2008. These sums shall be in addition to any amounts previously
10  appropriated and made available for the purposes of said items.

7006-0011     For the costs incurred by the division of banks associated
              with licensure of loan originators pursuant to chapter
              255F of the General Laws; provided, that the division may
              expend revenues in an amount not to exceed $5,000,000
              from the revenue received from administrative fees asso-
              ciated with said licensure fees and from civil administra-
              tive penalties pursuant to said chapter 255F; provided
              that, $2,000,000 shall be expended from such revenue as
              grants for the operation of a pilot program for best lending
              practices, first-time homeowner counseling for non-tradi-
              tional loans and 10 or more foreclosure education centers
              pursuant to section 16 and that the grants shall be awarded
              through a competitive application process under criteria
              created by the division and that no funds shall be
              expended from this item in the AA object class for the
              compensation of state employees for such program; pro-
              vided, further, that notwithstanding any general or special
              law to the contrary, for the purpose of accommodating
              timing discrepancies between the receipt of revenues and

related expenditures, the commissioner may incur
expenses and the comptroller may certify for payment the
amounts not to exceed the lower of this authorization or
the most recent revenue esti-mate, as reported in the state
accounting system_____    5,000,000

1    SECTION 2. Chapter 6 of the General Laws is hereby amended
2  by inserting after Section 172I the following section:—
3      Section 172J. Notwithstanding Section 172 or any other general
4  or special law to the contrary, the commissioner of the division of
5  banks may obtain all available criminal offender record informa-
6  tion and juvenile data as found in the court activity record infor-
7  mation from the criminal history systems board of all applicants
8  for licensure pursuant to Chapter 255F. Information obtained
9  under this section shall not be disseminated for any purpose other
10  than to provide mortgage protection for home owners.

1    SECTION 3. Chapter 183 of the General Laws is hereby
2  amended by inserting after section 6C the following section:—
3      Section 6D. Every mortgage and assignment of mortgage
4  secured by residential property, as defined in Section 1 of Chapter
5  255E, presented for record, in which a mortgage broker, as
6  defined in said Section 1 of said Chapter 255E, is involved shall
7  contain or have endorsed upon it the name, post office address and
8  license number of the mortgage broker and, if applicable, the
9  mortgage loan originator, as defined in Section 1 of Chapter 255F,
10  responsible for placing the mortgage loan with the mortgagee.
11  This endorsement, or notation that no mortgage broker or mort-
12  gage loan originator was involved in the mortgage, if known, shall
13  be recorded as part of the mortgage or assignment of mortgage.
14  Failure to comply with this section shall not affect the validity of
15  any mortgage or the recording of any mortgage or assignment of
16  mortgage.

1    SECTION 4. Section 27 of said Chapter 183, as appearing in
2  the 2006 Official Edition, is hereby amended by adding the
3  following paragraph:—
4      The holder of a mortgage of real estate, or the holder's repre-
5  sentatives, shall provide to the mortgagor or the mortgagor's
6  heirs, successors or assigns a written notice containing an item-
7  ized accounting of the disposition of the proceeds arising from a

8　sale under the power of sale including, but not limited to, the sale
9　price, legal fees, auctioneer fees, publication costs and other fees,
10　and any surplus due to the mortgagor, within 60 days after the
11　receipt of such funds provided, that if such sale is subject to fur-
12　ther legal proceedings, such accounting shall be stayed until the
13　conclusion of such proceedings.

1　SECTION 5. Section 63A of said Chapter 183, as so appearing
2　, is hereby amended by inserting after the word "interest", in line
3　2, the following words:— , change an adjustable or variable rate
4　to a fixed rate.

1　SECTION 6. Said Section 63A of said Chapter 183, as so
2　appearing, is hereby further amended by striking out, in line 44,
3　the words "one-half of".

1　SECTION 7. Chapter 184 of the General Laws is hereby
2　amended by inserting after section 17B the following section:—
3　Section 17B½. No mortgagee who makes a loan to a first-time
4　home loan borrower, to be secured by a mortgage on owner-occu-
5　pied, 1 to 4 family residential property in the Commonwealth,
6　shall make a subprime loan at a variable or adjustable rate of
7　interest unless the mortgagor affirmatively opts in writing for the
8　variable or adjustable rate subprime loan and receives certification
9　from a counselor with a third-party nonprofit organization that the
10　mortgagor has received counseling in person on the advisability of
11　the loan transaction; provided, further that said third party non-
12　profit organization shall have been approved by:—
13　(1) the United States Department of Housing and Urban Devel-
14　opment;
15　(2) a housing financing agency of the Commonwealth;
16　(3) the Massachusetts Homeownership Collaborative;
17　(4) or the regulatory agency which has jurisdiction over the
18　mortgagee. The commissioner of the division of banks shall main-
19　tain a list of approved counseling programs. At or before closing
20　such a loan, the mortgagee shall obtain evidence that the mort-
21　gagor has completed an approved counseling program. If such
22　subprime mortgage loan is made by a mortgagee in violation of
23　this section, the variable or adjustable rate terms of the loan shall

24  not be enforceable and the mortgagee shall only be entitled to col-
25  lect an interest rate equal to the lesser of the original interest rate,
26  including any discounted rate, or the current adjusted interest rate
27  throughout the remaining term of the loan. The commissioner of
28  banks shall issue directives or guidelines or adopt regulations to
29  administer and carry out this section and to further define the
30  terms used in this section.

1      SECTION 8. The last sentence of Section 13 of Chapter 186 of
2  the General Laws, as appearing in the 2006 Official Edition, is
3  hereby amended by adding the following words:— or by foreclo-
4  sure.

1      SECTION 9. Said chapter 186, is hereby further amended by
2  inserting after section 13 the following section:—
3      Section 13A. Upon a foreclosure of residential real property
4  pursuant to Chapter 244, a tenant, occupying a dwelling unit
5  under an unexpired term for years or a lease for a definite term in
6  effect at the time of the foreclosure by sale, shall be deemed a
7  tenant at will. Foreclosure shall not affect the tenancy agreement
8  of a tenant whose rental payment is subsidized under state or fed-
9  eral law.

1      SECTION 10. Chapter 244 of the General Laws is hereby
2  amended by inserting after section 14 the following section:—
3      Section 14A. The commissioner of the division of banks, here-
4  inafter referred to as the commissioner, shall maintain a foreclo-
5  sure database that shall include, but not be limited to, foreclosure
6  activity by mortgage lenders, mortgage holders and mortgage ser-
7  vicers, as well as the mortgage brokers and loan originators who
8  placed these mortgage loans in the Commonwealth, including
9  information relative to the original mortgagee and any subsequent
10  assignee. Based on the information received, the commissioner
11  shall produce a report, at least annually, to track developments and
12  trends of mortgage foreclosures on residential property in the
13  Commonwealth including, but not limited to, an analysis of the
14  pre-foreclosure notices submitted to the commissioner compared
15  to the final foreclosure notices, and any trends or patterns relative
16  to the geographic location of the residential properties and interest

17  rates. The report shall be available to the public upon request, and
18  the commissioner shall make it available in any other manner that
19  he may choose.

1    SECTION 11. Said Chapter 244 is hereby further amended by
2  inserting after section 35 the following section:—
3    Section 35A. (a) Any mortgagor of residential real property
4  located in the Commonwealth consisting of a dwelling house with
5  accommodations for 4 or less separate households and occupied in
6  whole or in part by the mortgagor, shall have a 90 day right to
7  cure a default of a required payment as provided in such residen-
8  tial mortgage or note secured by such residential real property by
9  full payment of all amounts that are due without acceleration of
10  the maturity of the unpaid balance of such mortgage. The right to
11  cure a default of a required payment shall be granted once during
12  any 5 year period, regardless of the mortgage holder.
13    (b) The mortgagee, or anyone holding thereunder, shall not
14  accelerate maturity of the unpaid balance of such mortgage oblig-
15  ation or otherwise enforce the mortgage because of a default con-
16  sisting of the mortgagor's failure to make any such payment in
17  subsection (a) by any method authorized by this chapter or any
18  other law until at least 90 days after the date a written notice is
19  given by the mortgagee to the mortgagor.
20    Said notice shall be deemed to be delivered to the mortgagor
21  when delivered to the mortgagor or when mailed to the mortgagor
22  at the mortgagor's address last known to the mortgagee or anyone
23  holding thereunder.
24    (c) The notice required in subsection (b) shall inform the mort-
25  gagor of the following:—
26    (1) the nature of the default claimed on such mortgage of resi-
27  dential real property and of the mortgagor's right to cure the
28  default by paying the sum of money required to cure the default;
29    (2) the date by which the mortgagor shall cure the default to
30  avoid acceleration, a foreclosure or other action to seize the home,
31  which date shall not be less than 90 days after service of the
32  notice and the name, address and local or toll free telephone
33  number of a person to whom the payment or tender shall be made;
34    (3) that, if the mortgagor does not cure the default by the date
35  specified, the mortgagee, or anyone holding thereunder, may take

# EXHIBIT A

# (Part 3 of 3)

36  steps to terminate the mortgagor's ownership in the property by a
37  foreclosure proceeding or other action to seize the home;
38      (4) the name and address of the mortgagee, or anyone holding
39  thereunder, and the telephone number of a representative of the
40  mortgagee whom the mortgagor may contact if the mortgagor dis-
41  agrees with the mortgagee's assertion that a default has occurred
42  or the correctness of the mortgagee's calculation of the amount
43  required to cure the default;
44      (5) the name of any current and former mortgage broker or
45  mortgage loan originator for such mortgage or note securing the
46  residential property; and
47      (6) that the mortgagor may be eligible for assistance from the
48  Massachusetts Housing Finance Agency and the division of banks
49  and the local or toll free telephone numbers the mortgagor may
50  call to request this assistance.
51      (d) To cure a default prior to acceleration under this section, a
52  mortgagor shall not be required to pay any charge, fee, or penalty
53  attributable to the exercise of the right to cure a default. The mort-
54  gagor shall pay late fees as allowed pursuant to Section 59 of
55  Chapter 183 and per-diem interest to cure such default. The mort-
56  gagor shall not be liable for any attorneys' fees relating to the
57  mortgagor's default that are incurred by the mortgagee or anyone
58  holding thereunder prior to or during the period set forth in the
59  notice required by this section. The mortgagee, or anyone holding
60  thereunder, may also provide for reinstatement of the note after
61  the 90 day notice to cure has ended.
62      (e) A copy of the notice required by this section and an affi-
63  davit demonstrating compliance with this section shall be filed by
64  the mortgagee, or anyone holding thereunder, in any action or pro-
65  ceeding to foreclose on such residential real property.
66      (f) A copy of the notice required by this section shall also be
67  filed by the mortgagee, or anyone holding thereunder, with the
68  commissioner of the division of banks. Additionally, if the resi-
69  dential property securing the mortgage loan is sold at a foreclo-
70  sure sale, the mortgagee, or anyone holding thereunder, shall
71  notify the commissioner of the division of banks, in writing, of the
72  date of the foreclosure sale and the purchase price obtained at the
73  sale.

8                    HOUSE — No. 4387                    [November

1    SECTION 12. Section 2 of Chapter 255E of the General Laws,
2  as appearing in the 2006 Official Edition, is hereby amended by
3  striking out, in lines 34 to 39, inclusive, the words:— ", or to any
4  nonprofit agency or corporation incorporated under the laws of
5  the Commonwealth for the purpose of assisting low to moderate
6  income households in the purchase or rehabilitation of family resi-
7  dences of four units or less and which holds tax-exempt status
8  granted under the provisions of Section 501(c)(3) or 501(c)4 of
9  the Internal Revenue Code".

1    SECTION 13. Section 8 of said Chapter 255E, as so appearing,
2  is hereby amended by striking out the third paragraph and
3  inserting in place thereof the following 8 paragraphs:—
4    The commissioner shall inspect a licensee's relevant records
5  and evidence of compliance with the provisions of this chapter or
6  any rule or regulation issued hereunder and with any other law,
7  rule or regulation applicable to the conduct of the business for
8  which it is licensed under this chapter. For the purposes of such
9  inspection, the commissioner or a representative of the commis-
10  sioner shall have access to the offices and place of business,
11  books, accounts, papers, records and files of all such licensees.
12  The commissioner, and any person designated by him, may
13  require the attendance and testimony of any person whom the
14  commissioner deems necessary relative to the conduct and opera-
15  tion of such business. The total cost for any such inspection,
16  which shall be paid by the licensee within 30 days after the receipt
17  of an invoice therefore, shall be in accordance with fees deter-
18  mined annually by the commissioner of administration pursuant to
19  Section 3B of Chapter 7, including expenses for necessary travel
20  outside the Commonwealth for the purposes of conducting such
21  inspections.
22    During the course of such inspection, a mortgage lender that
23  has made 50 or more home mortgage loans in the last calendar
24  year shall be examined for its compliance with fair lending laws
25  including, but not limited to, the requirements of the federal Equal
26  Credit Opportunity Act, Home Mortgage Disclosure Act, and the

27  Predatory Home Loan Practices Act. Such examination shall also
28  include an evaluation of such mortgage lender's:—

29    (a) origination of loans and other efforts to assist low and mod-
30  erate income residents, without distinction, to be able to acquire
31  or to remain in affordable housing at rates and terms that are rea-
32  sonable considering the lender's history with similarly situated
33  borrowers, the availability of mortgage loan products suitable for
34  such borrowers, and consistency with safe and sound business
35  practices;

36    (b) origination of loans and other efforts to assist low and mod-
37  erate income residents' ability to acquire or to remain in afford-
38  able housing;

39    (c) origination of loans that show an undue concentration and a
40  systematic pattern of lending resulting in the loss of affordable
41  housing units;

42    (d) efforts working with delinquent residential mortgage cus-
43  tomers to facilitate a resolution of the delinquency; and

44    (e) other efforts, including public notice of the scheduling of
45  examinations and the right of interested parties to submit written
46  comments relative to any such examination to the commissioner,
47  as, in the judgment of the commissioner, reasonably bear upon the
48  extent to which a mortgage lender is complying with the require-
49  ments of fair lending laws and helping to meet the mortgage loan
50  credit needs of communities in the Commonwealth.

51    Upon the completion of such examination, the commissioner
52  shall prepare a written evaluation of such lender's record of per-
53  formance, which shall be open to public inspection upon request,
54  and said written evaluation shall include:—

55    (a) the assessment factors utilized to determine the mortgage
56  lender's descriptive rating;

57    (b) the commissioner's conclusions with respect to each such
58  assessment factor; (c) a discussion of the facts supporting such
59  conclusions; and

60    (d) the mortgage lender's descriptive rating and the basis
61  therefor.

62    Based upon such examination, the mortgage lender shall be
63  assigned 1 of the following descriptive ratings:—

64    (a) outstanding record of performance in meeting the mortgage
65  loan credit needs of communities in the Commonwealth;

66     (b) high satisfactory record of performance in meeting the
67  mortgage loan credit needs of communities in the Commonwealth;
68     (c) satisfactory record of performance in meeting the mortgage
69  loan credit needs of communities in the Commonwealth;
70     (d) needs to improve record of performance in meeting the
71  mortgage loan credit needs of communities in the Commonwealth;
72  or
73     (e) substantial noncompliance in meeting the mortgage loan
74  credit needs of communities in the Commonwealth.
75     Notwithstanding the foregoing, the commissioner may establish
76  an alternative examination procedure for any mortgage lender,
77  which, as of the most recent examination, has been assigned a
78  rating of outstanding or high satisfactory for its record of perfor-
79  mance in meeting its community mortgage loan credit needs.
80     In considering an application from a licensed mortgage lender
81  for a renewal of a license issued pursuant to this chapter, the com-
82  missioner shall consider, but not be limited to, the record of per-
83  formance of any such lender in accordance with this section. Said
84  record of performance may provide the basis for the denial of any
85  such renewal application.
86     For the purposes of this section, no mortgage lender may
87  include a loan origination or loan purchase for consideration as
88  part of its examination under this section if another mortgage
89  lender claims the same loan origination or purchase for its review
90  under this section or under Section 14 of Chapter 167.
91     The commissioner shall adopt regulations implementing the
92  requirements of this section.

1     SECTION 14. Section 10 of said Chapter 255E, as so
2  appearing, is hereby amended by striking out the first sentence
3  and inserting in place thereof the following sentence:—
4     Whoever violates Section 2 or any rule or regulation promul-
5  gated thereunder shall be punished by a fine of not more than
6  $2,000 or by imprisonment in the house of correction for not more
7  than 2½ years or by imprisonment in state prison for not more
8  than 5 years, or both such fine and imprisonment.

1    SECTION 15. The General Laws are hereby amended by
2  inserting after chapter 255E the following chapter:—

3              CHAPTER 255F.
4    LICENSING OF MORTGAGE LOAN ORIGINATORS.

5    Section 1. As used in this chapter, the following words shall,
6  unless the context otherwise requires, have the following mean-
7  ings:—
8    "Commissioner", the commissioner of banks.
9    "Division", the division of banks.
10    "Entity", a person or entity that is a licensee under chapter
11  255E, as regulated by the division.
12    "Mortgage loan originator", a natural person who:—
13    (a) is employed by or associated with 1 and not more than 1
14  entity; and
15    (b) negotiates, solicits, arranges, provides or accepts residential
16  mortgage loan applications, or assists consumers in completing
17  such applications, except that employees whose responsibilities
18  are limited to clerical and administrative tasks and who do not
19  solicit borrowers, accept applications or negotiate the terms of
20  residential mortgage loans on behalf of the employer shall not be
21  considered mortgage loan originators and do not require licenses.
22    "Mortgage loan", a loan or an extension of credit including, but
23  not limited to, an extension of credit pursuant to a contract or an
24  assigned contract for the sale of goods or services, made to a nat-
25  ural person, the proceeds of which are to be used primarily for
26  personal, family or household purposes, and which is secured
27  wholly or partially by a mortgage on residential property.
28    "Residential property", real property located in the Common-
29  wealth having thereon a dwelling house with accommodations for
30  4 or less separate households and occupied, or to be occupied, in
31  whole or in part by the obligor on the mortgage debt.
32    Section 2. No natural person shall act as a mortgage loan origi-
33  nator unless such person has first obtained a mortgage loan origi-
34  nator license from the commissioner. An entity shall not
35  knowingly employ or retain a mortgage loan originator unless the
36  mortgage loan originator is licensed under this chapter.

37    Section 3. (a) The application for a mortgage loan originator
38 license shall be in the form prescribed by the commissioner and
39 shall contain the name, address and license number of the entity
40 with whom a mortgage loan originator is or will be employed or
41 associated with and other information as the commissioner may
42 require, including evidence of compliance with subsection (b).
43 The application shall also include a description of the activities of
44 the applicant, in such detail and for such periods as the commis-
45 sioner may require, and such further information as the commis-
46 sioner may require. The commissioner may obtain, pursuant to
47 Section 172J of Chapter 6 all available criminal offender record·
48 information from the criminal history systems board on an appli-
49 cant for a mortgage loan originator license by means of fingerprint
50 checks, and from the Federal Bureau of Investigation for a
51 national criminal history records check. The information obtained.
52 thereby may be used by the commissioner to determine the appli-
53 cant's eligibility for licensing under this chapter. Receipt of crim-
54 inal history record information by a private entity is prohibited.
55 Each application for a license shall be accompanied by an investi-
56 gation fee. Investigation and license fees shall be determined
57 · annually by the secretary of administration under Section 3B of
58 Chapter 7, but such total annual fees shall be not less than $500;
59 provided, that such investigation and license fees shall not apply
60 to any community development corporation as defined in Section
61 .1 of Chapter 40F and organized under the General Laws.
62    (b) An applicant shall have completed a residential mortgage
·63 lending course, approved by the division, not later than the 2 year
64 period immediately preceding the date of the application.
65    Section 4. If the commissioner finds that the financial responsi-
66 bility, character, reputation, integrity and general fitness of the
67 applicant is such as to warrant belief that the applicant will act
68 honestly, fairly, soundly and efficiently in the public interest, con-
69 sistent with the purposes of this chapter, the commissioner shall
70 issue the applicant a license to engage in the business of a mort-
71 gage loan originator upon payment of the required fees. If the
72 commissioner shall not so find, or if the applicant's criminal his-
73· tory demonstrates any felony convictions or other convictions or
74 admissions to sufficient facts involving fraud or if the applicant
75 has had any adverse civil judgments involving fraudulent deal-

76  ings, the commissioner shall not issue a license and shall notify
77  the applicant of the denial. Within 20 days thereafter, the commis-
78  sioner shall enter upon the division's records a written decision
79  and findings containing the reasons supporting the denial and
80  shall forthwith give written notice thereof by registered mail to
81  the applicant. Within 30 days after receipt of such notice, the
82  applicant may seek judicial review of the denial in accordance
83  with Section 14 of Chapter 30A.

84      Section 5. A mortgage loan originator may transact business
85  only for an employing entity. Each original license issued to a
86  mortgage loan originator must be provided to and maintained by
87  the employing entity at the entity's main office. If the employment
88  of a mortgage loan originator is terminated, the employing entity
89  shall return the mortgage loan originator's license to the division
90  within 5 business days after termination. The reason for termina-
91  tion shall be given in a format determined by rules and regulations
92  of the commissioner. For a period of 1 year after the termination
93  of employment, the mortgage loan originator may request the re-
94  assignment of the license to another entity by submitting an appli-
95  cation to the division, along with a fee established by the division
96  by rule. The return of the license of any mortgage loan originator
97  to the division that is not re-assigned to another entity terminates
98  the right of the mortgage loan originator to engage in any residen-
99  tial mortgage loan origination activity until division procedures
100 have been followed to reactivate such license. The license of any
101 mortgage loan originator that has been returned to the division and
102 not re-assigned to another entity within 1 year of termination of
103 employment shall be cancelled.

104     Each license shall state the name of the mortgage loan origi-
105 nator licensee and the name and main office address of the entity
106 employing such mortgage loan originator.

107     The commissioner may establish an expedited re-assignment
108 process of a mortgage loan originator's license to another entity if
109 the reason for such re-assignment is directly related to increased
110 responsibilities or compensation.

111     The commissioner may adopt, amend or repeal rules and regu-
112 lations to aid in the administration and enforcement of this
113 chapter.

114 Section 6. Each application for a license shall be accompanied
115 by an investigation fee. Investigation and license fees shall be
116 determined annually by the secretary of administration under
117 Section 3B of Chapter 7 provided that such total annual fees shall
118 be not less than $500; provided further, that such investigation and
119 license fees shall not apply to any community development corpo-
120 ration as defined in Section 1 of Chapter 40F and organized under
121 the General Laws. The license of a mortgage loan originator shall
122 expire annually. Each licensee, shall annually, on or before a date
123 to be determined by the commissioner, submit a license renewal
124 application. The license renewal application shall be on a form
125 prescribed by the commissioner, signed under the pains and penal-
126 ties of perjury, containing such information as the commissioner
127 may require.

128  As determined by the commissioner licensees shall complete at
129 least 8 hours of residential mortgage lending continuing education
130 courses every 3 years. Failure of the licensee to satisfy the contin-
131 uing education requirement shall render the mortgage loan origi-
132 nator ineligible for renewal and such license shall be deemed to be
133 inactive. A mortgage loan originator who neglects to file an appli-
134 cation or fails to amend the same within 15 days of notice from
135 the commissioner directing that the application be amended shall
136 be deemed inactive. Inactive mortgage loan originators shall be
137 prohibited from engaging in business as a mortgage loan origi-
138 nator.

139  Section 7. The commissioner may suspend, revoke or refuse to
140 renew any license issued pursuant to this chapter if the commis-
141 sioner finds that:—

142  (1) the licensee has violated this chapter or any rule or regula-
143 tion adopted hereunder, or any other law applicable to the conduct
144 of its business;

145  (2) any fact or condition exists which, if it had existed at the
146 time of the original application for such license, would have war-
147 ranted the commissioner in refusing to issue such license; or

148  (3) the licensee has committed any fraud, misappropriated
149 funds or misrepresented any of the material particulars of a mort-
150 gage loan transaction.

151  Except as provided in Section 8, no license shall be revoked or
152 suspended except after notice and a hearing thereon pursuant to

153  Chapter 30A. Any order issued pursuant to this section shall be
154  subject to judicial review in accordance with Section 14 of said
155  Chapter 30A.

156      A licensee may surrender his license by delivering to the com-
157  missioner written notice that he hereby surrenders such license,
158  but such surrender shall not affect the civil or criminal liability of
159  the licensee for acts committed before such surrender.

160      Section 8. (a) If the commissioner determines, after giving
161  notice of and opportunity for a hearing, that a licensee has
162  engaged in an act or practice constituting a violation of this
163  chapter or a rule, regulation or order promulgated hereunder, the
164  commissioner may order such licensee to cease and desist from
165  such unlawful act or practice and take such affirmative action as
166  in the commissioner's judgment will affect the purposes of this
167  chapter.

168      (b) If the commissioner makes written findings of fact that the
169  public interest will be irreparably harmed by delay in issuing an
170  order under subsection (a), the commissioner may issue a tempo-
171  rary cease and desist order. Upon the entry of a temporary cease
172  and desist order, the commissioner shall promptly notify, in
173  writing, the licensee and the employing entity affected thereby
174  that such order has been so entered, the reasons therefore, and
175  that, within 20 days after the receipt of a written request from
176  such licensee, the matter will be scheduled for hearing to deter-
177  mine whether such temporary order shall become permanent and
178  final. If no such hearing is requested and none is ordered by the
179  commissioner, the order shall remain in effect until it is modified
180  or vacated by the commissioner. If a hearing is requested or
181  ordered, the commissioner, after giving notice of and opportunity
182  for a hearing to the licensee and the employing entity subject to
183  said order shall, by written findings of fact and conclusions of
184  law, vacate, modify or make permanent the order.

185      (c) No order issued pursuant to this section, except an order
186  issued pursuant to subsection (b), may be entered without prior
187  notice of and opportunity for a hearing. The commissioner may
188  vacate or modify an order under this section upon finding that the
189  conditions which required such an order have changed and that it
190  is in the public interest to so vacate or modify.

16                    HOUSE — No. 4387              [November

191    Any order issued pursuant to this section shall be subject to
192  judicial review in accordance with Section 14 of Chapter 30A.
193    Section 9. The commissioner may enforce this chapter, or
194  restrain any violations thereof, by filing a civil action in any court
195  of competent jurisdiction.
196    Section 10. Whoever violates section 2 or any rule or regulation
197  promulgated thereunder shall be punished by a fine of not more
198  than $2,000 or by imprisonment in the house of correction for not
199  more than 2½ or by imprisonment in state prison for not more
200  than 5 years, or by both such fine and imprisonment. Each day
201  such violation occurs or continues shall be deemed a separate
202  offense. The penalty provision of this section shall be in addition
203  to any other law applicable to a licensee or other person for vio-
204  lating Section 2 or any rule or regulation made thereunder.
205    Section 11. (a) Whenever the commissioner finds that any
206  licensee has violated this chapter or any rule or regulation promul-
207  gated thereunder, or any other law of the Commonwealth applic-
208  able to the conduct of a mortgage loan originator on residential
209  property in the Commonwealth, the commissioner may, by order,
210  in addition to any other action authorized under this chapter or
211  any rule or regulation made thereunder, impose a penalty upon the
212  person which shall not exceed $5,000 for each violation up to a
213  maximum of $100,000 for such violation plus the costs of investi-
214  gation. The commissioner may impose a penalty which shall not
215  exceed $5,000 for each violation of this chapter, or any rule or
216  regulation promulgated hereunder, by a person other than a
217  licensee, plus the costs of investigation.
218    (b) Nothing in this section shall limit the right of any individual
219  or entity who has been injured as a result of any violation of this
220  chapter by a licensee, or any person other than a licensee, to bring
221  an action to recover damages or restitution in a court of competent
222  jurisdiction.
223    (c) Any findings or orders issued by the commissioner pursuant
224  to this section shall be subject to review as provided in Chapter
225  30A.
226    Section 12. (a) Whenever the commissioner determines that any
227  person has, directly or indirectly, violated this chapter or any rule
228  or regulation promulgated hereunder, applicable to the conduct of
229  a mortgage loan originator on residential property in the Com-

230  monwealth, any order issued by the commissioner pursuant to this
231  chapter or any written agreement entered between the licensee and
232  the commissioner, the commissioner may serve upon that person a
233  written notice of intention:—

234      (1) to prohibit the person from performing in the capacity of a
235  principal employee on behalf of any licensee for a period of time
236  that the commissioner considers necessary;

237      (2) to prohibit the person from applying for or obtaining a
238  license from the commissioner for a period up to 36 months
239  following the effective date of an order issued under subsection
240  (b) or (c); or

241      (3) to prohibit the person from any further participation, in any
242  manner, as a mortgage loan originator in the Commonwealth or to
243  prohibit the person from being employed by, as agent of, or oper-
244  ating on behalf of a licensee under this chapter or any other busi-
245  ness which requires a license from the commissioner.

246      (b) A written notice issued under subsection (a) shall contain a
247  written statement of the facts that support the prohibition and shall
248  give notice of an opportunity for a hearing to be held thereon. The
249  hearing shall be fixed for a date not more than 30 days after the
250  date of service upon the commissioner of the request for a
251  hearing. If the person fails to submit a request for a hearing within
252  20 days of service of notice under subsection (a), or otherwise
253  fails to appear in person or by a duly authorized representative,
254  the party shall be considered to have consented to the issuance of
255  an order of prohibition in accordance with the notice.

256      (c) In the event that consent is granted by operation of subsec-
257  tion (b), or if after a hearing the commissioner finds that any of
258  the grounds specified in the notice have been established, the
259  commissioner may issue an order of prohibition in accordance
260  with subsection (a) as the commissioner finds appropriate.

261      (d) An order issued under subsection (b) or (c) shall be effec-
262  tive upon service upon the person. The commissioner shall also
263  serve a copy of the order upon the licensee of which the person is
264  an employee or on whose behalf the person is performing. The
265  order shall remain in effect and enforceable until it is modified,
266  terminated, suspended or set aside by the commissioner or a court
267  of competent jurisdiction.

268    (c) Except as consented to in writing by the commissioner, any
269 person who, pursuant to an order issued under subsection (b) or
270 (c), has been prohibited from participating in whole or in part as a
271 mortgage loan originator may not, while the order is in effect,
272 continue or commence to perform in the capacity of a mortgage
273 loan originator, or otherwise participate in any manner, if so pro-
274 hibited by order of the commissioner, in the conduct of the affairs
275 of:—

276    (1) any licensee under this chapter;

277    (2) any other business which requires a license from the com-
278 missioner; or

279    (3) any bank as defined under section 1 of chapter 167 or any
280 subsidiary thereof.

281    Section 13. The commissioner may suspend, revoke or refuse to
282 renew the license of the entity employing any licensed mortgage
283 originator if the commissioner finds that:—

284    (a) the entity knew or should have known that the mortgage
285 loan originator violated this chapter or any rule or regulation pro-
286 mulgated hereunder, or any other law applicable to the conduct of
287 its business;

288    (b) the entity knew of any fact or condition to exist which, if it
289 had existed at the time of the original application for such license,
290 would have warranted the commissioner in refusing to issue such
291 license;

292    (c) the mortgage loan originator committed any fraud, misap-
293 propriated funds or misrepresented any of the material particulars
294 of a mortgage loan transaction approved by the entity; or

295    (d) The entity has failed to comply with the reporting require-
296 ments set forth in Section 15.

297    Section 14. Each licensee shall, when directed by the commis-
298 sioner, permit the commissioner or a duly authorized representa-
299 tive to inspect its relevant records and evidence of compliance
300 with this chapter or any rule or regulation issued hereunder and
301 with any other law, rule and regulation applicable to the conduct
302 of a mortgage loan originator licensed under this chapter.

303    Section 15. An entity employing any licensed mortgage origi-
304 nator shall annually report the following to the commissioner of
305 banks:—

306    (1) the total number of loans originated by all such licensees;

307    (2) the geographic distribution of such loans;
308    (3) the number of defaults of such loans; and
309    (4) any such other information the commissioner may require
310  consistent with this chapter.

1    SECTION 16. The division of banks, in consultation with the
2  city of Boston, the department of housing and community devel-
3  opment, the Massachusetts Housing Finance Agency and the
4  Massachusetts Bankers Association, shall develop a pilot program
5  to identify best practices for financial institutions to provide first
6  time homebuyer loans, to provide for foreclosure prevention for
7  at-risk homeowners, and to assist approved counseling programs
8  with in-person counseling pursuant to section 17B½ of Chapter
9  184 of the General Laws, as provided for in item 7006-0011 in
10  Section 1.
11    Such pilot program, shall also provide for best lending and bor-
12  rowing practices for consumers and mortgagees in cities or towns
13  with:—
14    (1) housing units within low or moderate income census tracts
15  as defined by the United States census bureau; or
16    (2) high foreclosure activity as measured by residential foreclo-
17  sure petitions filed over the total number of 1 to 4 family housing
18  units within such city or town. Such guidelines and counseling
19  shall provide for best practices that:— (a) attain a minimal risk of
20  high cost lending;
21    (b) have a demonstrated ability to avoid foreclosures;
22    (c) have a demonstrated record of pricing that ensures unifor-
23  mity of lending;
24    (d) avoid a disparity of pricing in low and moderate income
25  census tracts; and
26    (e) maintain foreclosure prevention practices that meet or
27  exceed standards met by government sponsored enterprises.
28    Such pilot program shall also provide for foreclosure training to
29  10 or more foreclosure education centers for counseling and assis-
30  tance to owner-occupied 1 to 4 family dwellings in such geo-
31  graphic areas.
32    On or before December 31, 2008, the division of banks shall
33  report the results of such pilot program to the general court.

1     SECTION 17. Notwithstanding any general or special law to
2  the contrary, the division of banks shall open an investigation and
3  study relative to a residential mortgage lending course examina-
4  tion process pursuant to subsection (b) of Section 3 of chapter
5  255F of the General Laws. The division shall report to the general
6  court the results of its investigation and study and its recommen-
7  dations by filing the same with the clerks of the house of repre-
8  sentatives and the senate, who shall forward the same to the
9  chairmen of the joint committees on financial services and
10  housing on or before December 1, 2008.
11     The commissioner of the division of banks shall adopt rules and
12  regulations to produce an examination to be administered to mort-
13  gage loan originators upon completion of a residential mortgage
14  lending course as provided under said Chapter 255F. Such rules or
15  regulations shall require that, on and after December 1, 2009, the
16  commissioner shall administer such examination in the manner he
17  deems appropriate for any applicant for a mortgage loan originator
18  license who shall first pass such examination to be eligible to
19  apply for a license under said Chapter 255F.

1     SECTION 18. The commissioner of the division of banks shall
2  adopt the initial rules and regulations required under Section 17
3  not later than December 1, 2009.

1     SECTION 19. A natural person who meets the definition of a
2  mortgage loan originator under Section 1 of Chapter 255F of the
3  General Laws before the effective date of this act may obtain a
4  mortgage loan originator license from the commissioner of banks
5  pursuant to said Chapter 255F within 180 days after said effective
6  date, notwithstanding the requirements of subsection (b) of
7  Section 3 of said Chapter 255F, if he submits an application
8  therefor and otherwise complies with the requirements of said
9  Chapter 255F.

1     SECTION 20. Section 7 shall take effect on January 31, 2007.

1     SECTION 21. Section 11 shall take effect on May 1, 2007 and
2  apply to all mortgages of residential real property located in the
3  Commonwealth consisting of a dwelling house with accommoda-

4 tions for 4 or less separate households and occupied in whole or in
5 part by the mortgagor and which secures a loan before, on or after
6 the effective date of this act. Said Section 11 shall not apply to
7 such mortgages accelerated or whose statutory condition has been
8 voided under the terms of the mortgage to secure the note, prior to
9 the effective date of this act.

1    SECTION 22. Section 15 shall take effect on July 1, 2008.

This Document Has Been Printed On 100% Recycled Paper.

# EXHIBIT
## "G"



The Commonwealth of Massachusetts
Executive Department
State House • Boston, MA 02133
(617) 725-4000

DEVAL L. PATRICK
GOVERNOR

TIMOTHY P. MURRAY
LIEUTENANT GOVERNOR

**FOR IMMEDIATE RELEASE:**
November 30, 2007

**CONTACT:**
Kyle Sullivan
Cyndi Roy
Becky Deusser
(617) 725-4025

## GOVERNOR DEVAL PATRICK SIGNS COMPREHENSIVE FORECLOSURE PREVENTION LEGISLATION INTO LAW
*Landmark legislation will help homeowners, fight ongoing rise in foreclosures, and set national standard for protecting consumers*

BOSTON - Friday, November 30, 2007 – Governor Deval Patrick has signed landmark legislation designed to offer much needed relief to existing homeowners and ensure the necessary legal and regulatory framework is in place to prevent the ongoing occurrence of the mortgage-related issues the Commonwealth is dealing with today. With the provisions of this bill now law, Massachusetts has one of the most consumer protective mortgage lending statutes in the country.

"This legislation is a critical step in protecting homes, families and communities throughout the Commonwealth," said Governor Patrick. "These reform measures will give the Commonwealth and its citizens some of the tools necessary to fight the surge in home foreclosures and unfair lending practices."

This legislation is the result of the coordinated efforts of the Patrick Administration, House and Senate leadership and members, Attorney General Martha Coakley and Boston Mayor Thomas Menino. It also draws upon the recommendations of the Mortgage Summit Group, a partnership of 50 participants with a wide range of expertise— from non-profit agencies, government agencies and the mortgage lending industry.

"The mortgage lending bill enacted by the Legislature and signed today by Governor Patrick marks another important step to address the subprime lending crisis and to prevent future abuses in mortgage lending," said Attorney General Coakley. "We appreciate the Governor's and the Legislature's attention to this matter, and look forward to ongoing collaboration as we continue our work to address issues around predatory lending in the Commonwealth."

"This new law will help protect home-buyers from predatory lending and bring meaningful

assistance to those facing foreclosure," said House Speaker Salvatore F. DiMasi (D-Boston). "This problem is only going to get worse so acting now with this bold measure is critically important.

"The rate of mortgage foreclosures in Massachusetts continues to be a concern," Senate President Therese Murray (D-Plymouth) said. "This legislation will help prevent a future foreclosure crisis as it takes aim at predatory lenders and gives homeowners and borrowers a fighting chance."

"This law is a major step forward toward finding a solution to foreclosure in Massachusetts," Mayor Menino said. "Governor Patrick and other partners in the state have worked very hard to pass this legislation. In Boston, we have seen the successes of our homeowner education program. I look forward to having the new strategies included in the legislation implemented."

The statute creates a centralized statewide foreclosure database of foreclosure activity to monitor and analyze foreclosures and foreclosure patterns at the Division of Banks; and mandates that mortgage holders file a 90-day notice of intent to foreclose with the homeowner and the Division of Banks. Further, this bill requires mortgagees to receive consumer counseling prior to obtaining nonconforming variable rate mortgage loans

Provisions of the law include:

- Improved oversight and monitoring of certain mortgage lenders.
- Requiring loan originators to be licensed by the Division of Banks and providing a $3 million appropriation to the Division to implement the provisions of the bill.
- Extending $2 million in grants to establish 10 education centers around the Commonwealth and promote first time homebuyer and foreclosure counseling.
- Granting tenants of foreclosed properties additional tenant at will rights.
- Requiring every mortgage to have endorsed on it the name, address, and license number of the mortgage broker and mortgage originator, if applicable.
- Mandating an accounting of the disposition of the proceeds of a foreclosure sale to a foreclosed consumer, including whether there is any surplus due to the consumer or if any deficiency remains.
- Establishing a foreclosure database at the Division of Banks to include information on all preliminary Right to Cure or foreclosure filing notices and all final foreclosure sale information.
- Requiring a 90 day "Right to Cure" and that a notice of the Right to Cure be filed with the Division of Banks.
- Requiring that the holder of a mortgage notify the Division of Banks of the date of a foreclosure sale and the purchase price of the property.
- Prohibiting a subprime adjustable rate mortgage for first time homebuyers unless they a) affirmatively opt into a subprime adjustable rate product, and b) get in person counseling from a certified counselor.

A number of legislators played critical roles in the passage of the legislation.

"If this bill had been in place six years ago, thousands of Massachusetts families would have been spared the heartache and devastation of foreclosure," said bill sponsor Senator Sue Tucker (D-Andover), Senate Chairwoman of the Joint Committee on Housing.

"Buying a home is the biggest financial decision most of us will ever make," said Rep. Ronald Mariano (D-Quincy), House Chairman of the Joint Committee on Financial Services. "We need to make sure consumers, especially first-time buyers, understand what they are getting into. We also need to ensure that the person guiding them through this process understands the complexities and can be trusted."

"While mortgage foreclosures continue to affect thousands of homeowners throughout the Commonwealth, the multi-faceted approach taken in this legislation will do a great deal to eliminate many of the bad actors responsible for the current crisis, and ensure that this situation does not repeat itself in the future," said Senator Buoniconti, Senate Chairman of the Joint Committee on Financial Services.

"This legislation is a comprehensive effort to provide borrowers with the educational information they need before entering into a mortgage. It also ensures that the standards that honest lenders already meet are followed by the entire lending industry," said Representative David Torrisi (D-North Andover).

(###)

# EXHIBIT B

**UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**

| | |
|---|---|
| JOSEPH G. CURTIS and<br>ELIZABETH CURTIS,<br><br>        Plaintiffs,<br><br>v.<br><br>AMERIQUEST MORTGAGE COMPANY<br>and<br>DEUTSCHE BANK NATIONAL TRUST<br>COMPANY, AS TRUSTEE OF<br>AMERIQUEST MORTGAGE<br>SECURITIES, INC. ASSET-BACKED<br>PASS THROUGH CERTIFICATES<br>SERIES 2004-R10, UNDER THE<br>POOLING AND SERVICING<br>AGREEMENT DATED AS OF OCTOBER<br>1, 2004, WITHOUT RECOURSE,<br><br>        Defendants. | C. A. No. 1:08-cv-10488 |

**CONSENT TO REMOVAL**

Defendant Deutsche Bank National Trust Company, as Trustee of Ameriquest Mortgage Securities, Inc. Asset-Backed Pass Through Certificates Series 2004-R10, under the Pooling and Servicing Agreement dated as of October 1, 2004, Without Recourse, consents to the removal of the action styled <u>Joseph G. Curtis and Elizabeth Curtis v. Ameriquest Mortgage Company and Deutsche Bank National Trust Company, as Trustee of Ameriquest Mortgage Securities, Inc. Asset-Backed Pass Through Certificates Series 2004-R10</u>, Barnstable County Superior Court, No. BACV2008-00175, to the United States District Court for the District of Massachusetts from the Barnstable County Superior Court per the Notice of Removal filed by Defendant Ameriquest Mortgage Company.

Respectfully Submitted,

DEUTSCHE BANK NATIONAL TRUST
COMPANY, AS TRUSTEE OF
AMERIQUEST MORTGAGE SECURITIES,
INC. ASSET-BACKED PASS THROUGH
CERTIFICATES SERIES 2004-R10,
UNDER THE POOLING AND SERVICING
AGREEMENT DATED AS OF OCTOBER
1, 2004, WITHOUT RECOURSE,

By its attorneys,

/s/ Bradley C. Morin
R. Bruce Allensworth (BBO #015820)
    bruce.allensworth@klgates.com
Phoebe S. Winder (BBO #567103)
    phoebe.winder@klgates.com
Bradley C. Morin (BBO #666559)
    brad.morin@klgates.com
KIRKPATRICK & LOCKHART
  PRESTON GATES ELLIS LLP
State Street Financial Center
One Lincoln Street
Boston, MA 02111
(617) 261-3100

March 25, 2008

## CERTIFICATE OF SERVICE

I hereby certify that this **Consent to Removal** filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing and paper copies will be sent to those indicated as non registered participants on March 25, 2008.

/s/ Bradley C. Morin
Bradley C. Morin

JS 44 (Rev. 11/04)

# CIVIL COVER SHEET

The JS-44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. (SEE INSTRUCTIONS ON THE REVERSE OF THE FORM.)

## I. (a) PLAINTIFFS

Joseph G. Curtis and
Elizabeth Curtis

## DEFENDANTS

(1) Ameriquest Mortgage Company, and (2) Deutsche Bank National Trust Company, as Trustee of Ameriquest Mortgage Securities, Inc. Asset-Backed Pass Through Certificates Series 2004-R10, under the Pooling and Servicing Agreement dated as of October 1, 2004, Without Recourse

**(b)** County of Residence of First Listed Plaintiff　BARNSTABLE COUNTY, MA
(EXCEPT IN U.S. PLAINTIFF CASES)

County of Residence of First Listed　ORANGE COUNTY, CA
(IN U.S. PLAINTIFF CASES ONLY)

NOTE:　IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE LAND INVOLVED

**(c)** Attorney's (Firm, Name, Address, and Telephone Number)

See Appendix A.

Attorneys (If Known)

See Appendix A.

## II. BASIS OF JURISDICTION (Place an "X" in One Box Only)

☐ 1 U.S. Government Plaintiff

☐ 2 U.S. Government Plaintiff

☐ 3 Federal Question (U.S. Government Not a Party)

☒ 4 Diversity (Indicate Citizenship of Parties in Item III)

## III. CITIZENSHIP OF PRINCIPAL PARTIES (Place an "X" in One Box for Plaintiff
(For Diversity Cases Only) and one box for Defendant)

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☒ 1 | ☐ 1 | Incorporated or Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated or Principal Place of Business In Another State | ☐ 5 | ☒ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT (Place an "X" in One Box Only)

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | ☐ 610 Agriculture | ☐ 422 Appeal 28 USC 158 | ☐ 400 State reapportionment |
| ☐ 120 Marine | ☐ 310 Airplane | ☐ 362 Personal Injury | ☐ 620 Other Food & Drug | ☐ 423 Withdrawal | ☐ 410 Antitrust |
| ☐ 130 Miller Act | ☐ 315 Airplane Product | Med. Malpractice | ☐ 625 Drug Related Seizure | 28 USC 157 | ☐ 430 Banks and Banking |
| ☐ 140 Negotiable Instrument | Liability | ☐ 365 Personal Injury | of Property 21 USC | | ☐ 450 Commerce/ICC Rates/etc. |
| ☐ 150 Recovery of Overpayment | ☐ 320 Assault, Libel & | Product Liability | ☐ 630 Liquor Laws | **PROPERTY RIGHTS** | ☐ 460 Deportation |
| & Enforcement of Judgment | Slander | ☐ 368 Asbestos Personal | ☐ 640 R.R. & Truck | ☐ 820 Copyrights | ☐ 470 Racketeer Influenced and |
| ☐ 151 Medicare Act | ☐ 330 Federal Employers' | Injury Product | ☐ 650 Airline Regs. | ☐ 830 Patent | Corrupt Organizations |
| ☐ 152 Recovery of Defaulted | Liability | Liability | ☐ 660 Occupational | ☐ 840 Trademark | ☐ 810 Selective Service |
| Student Loans | ☐ 340 Marine | **PERSONAL PROPERTY** | Safety/Health | | ☐ 850 Securities/Commodities/ |
| (Excl. Veterans) | ☐ 345 Marine Product | ☐ 370 Other Fraud | ☐ 690 Other | **SOCIAL SECURITY** | Exchange |
| ☐ 153 Recovery of Overpayment | Liability | ☐ 371 Truth in Lending | | ☐ 861 HIA (1395ff) | ☐ 875 Customer Challenge |
| of Veteran's Benefits | ☐ 350 Motor Vehicle | ☐ 380 Other Personal | **LABOR** | ☐ 862 Black Lung (923) | 12 USC 3410 |
| ☒ 160 Stockholders' Suits | ☐ 355 Motor Vehicle | Property Damage | ☐ 710 Fair Labor Standards | ☐ 863 DIWC/DIW W (405(g)) | ☐ 890 Other Statutory Actions |
| ☒ 190 Other contract | Product Liability | ☐ 385 Property Damage | Act | ☐ 864 SSID Title XVI | ☐ 891 Agricultural Acts |
| ☐ 195 Contract Product Liability | ☐ 360 Other Personal | Product Liability | ☐ 720 Labor/Mgmt. Relations | ☐ 865 RSI (405(g)) | ☐ 892 Economic Stabilization Act |
| ☐ 196 Franchise | Injury | | ☐ 730 Labor/Mgmt. Reporting | | ☐ 893 Environmental Matters |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | & Disclosure Act | **FEDERAL TAX SUITS** | ☐ 894 Energy Allocation Act |
| ☐ 210 Land Condemnations | ☐ 441 Voting | ☐ 510 Motions to Vacate | ☐ 740 Railway Labor Act | ☐ 870 Taxes (U.S. Plaintiff | ☐ 895 Freedom of Information Act |
| ☐ 220 Foreclosure | ☐ 442 Employment | Sentence | | or Defendant) | ☐ 900 Appeal of Fee Determination |
| ☐ 230 Rent Lease & Ejectment | ☐ 443 Housing/ | **Habeas Corpus:** | ☐ 790 Other Labor Litigation | ☐ 871 IRS—Third Party | Under Equal Access |
| ☐ 240 Torts to Land | Accommodations | ☐ 530 General | | 26 USC 7609 | to Justice |
| ☐ 245 Tort Product Liability | ☐ 444 Welfare | ☐ 535 Death Penalty | ☐ 791 Empl. Ret. Inc. | | ☐ 950 Constitutionality of |
| ☐ 290 All other Real Property | ☐ 445 Amer. w/Disabilities - | ☐ 540 Mandamus & Other | Security Act | | State Statutes |
| | Employment | ☐ 550 Civil Rights | | | |
| | ☐ 446 Amer. w/Disabilities - | ☐ 555 Prison Condition | | | |
| | Other | | | | |
| | ☐ 440 Other Civil Rights | | | | |

## V. ORIGIN (PLACE AN "X" IN ONE BOX ONLY)

☐ 1 Original Proceeding

☒ 2 Removed from State Court

☐ 3 Remanded from Appellate Court

☐ 4 Reinstated or Reopened

☐ 5 Transferred from another district (specify)

☐ 6 Multidistrict Litigation

☐ 7 Appeal to District Judge from Magistrate Judgment

## VI. CAUSE OF ACTION

(Cite the U.S. Civil Statute under which you are filing (**Do not cite jurisdictional statutes unless diversity**))

28 U.S.C. § 1332 (Diversity Jurisdiction)

Brief statement of cause:

Complaint seeking damages and injunctive relief related to mortgage loan origination and foreclosure

## VII. REQUESTED IN COMPLAINT:

☐ CHECK IF THIS IS A CLASS ACTION UNDER F.R.C.P. 23

DEMAND $

CHECK YES only if demanded in complaint:

JURY DEMAND: ☒ Yes　☐ No

## VIII. RELATED CASE(S) IF ANY

(See instructions):　JUDGE _____　DOCKET NUMBER _____

DATE

March 25, 2008

SIGNATURE OF ATTORNEY OF RECORD

/s/ Bradley C. Morin

FOR OFFICE USE ONLY

RECEIPT # _____　AMOUNT _____　APPLYING IFP _____　JUDGE _____　MAG. JUDGE _____

APPENDIX A – COUNSEL OF RECORD

<u>Plaintiffs Joseph G. Curtis and Elizabeth Curtis</u>
    Matthew Dunn
    THE DUNN LAW GROUP
    15 Broad Street
    Suite 512
    Boston, MA 02109
    617-725-0033

<u>Defendant Ameriquest Mortgage Company</u>
    R. Bruce Allensworth
    Phoebe S. Winder
    Bradley C. Morin
    KIRKPATRICK & LOCKHART
      PRESTON GATES ELLIS LLP
    State Street Financial Center
    One Lincoln Street
    Boston, MA 02111
    (617) 261-3100

<u>Defendant Deutsche Bank National Trust Company, as Trustee of Ameriquest Mortgage Securities, Inc. Asset-Backed Pass Through Certificates Series 2004-R10, under the Pooling and Servicing Agreement dated as of October 1, 2004, Without Recourse</u>
    R. Bruce Allensworth
    Phoebe S. Winder
    Bradley C. Morin
    KIRKPATRICK & LOCKHART
      PRESTON GATES ELLIS LLP
    State Street Financial Center
    One Lincoln Street
    Boston, MA 02111
    (617) 261-3100

**UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**

1. Title of case (name of first party on each side only)    Joseph G. Curtis v. Ameriquest Mortgage Company

       ____

2. Category in which the case belongs based upon the numbered nature of suit code listed on the civil cover sheet.  (See local
   rule 40.1(a)(1)).

       __      I.      160, 410, 470, 535, R.23, REGARDLESS OF NATURE OF SUIT.

       X      II.     195, 196, 368, 400, 440, 441-446, 540, 550, 555, 625, 710, 720, 730,     *Also complete AO 120 or AO 121
                       740, 790, 791, 820*, 830*, 840*, 850, 890, 892-894, 895, 950.            for patent, trademark or copyright cases

       __      III.    110, 120, 130, 140, 151, 190, 210, 230, 240, 245, 290, 310,
                       315, 320, 330, 340, 345, 350, 355, 360, 362, 365, 370, 371,
                       380, 385, 450, 891.

       __      IV.    220, 422, 423, 430, 460, 462, 463, 465, 480, 490, 510, 530, 610,
                       620, 630, 640, 650, 660, 690, 810, 861-865, 870, 871, 875, 900.

       __      V.      150, 152, 153.

3. Title and number, if any, of related cases.  (See local rule 40.1(g)).  If more than one prior related case has been filed in this
   district please indicate the title and number of the first filed case in this court.

       n/a

4. Has a prior action between the same parties and based on the same claim ever been filed in this court?

                                                        YES ☐            NO ☒

5. Does the complaint in this case question the constitutionality of an act of congress affecting the public interest?   (See 28 USC
   §2403)
                                                        YES ☐            NO ☒

       If so, is the U.S.A. or an officer, agent or employee of the U.S. a party?

                                                        YES ☐            NO ☐

6. Is this case required to be heard and determined by a district court of three judges pursuant to title 28 USC §2284?

                                                        YES ☐            NO ☐

7. Do all of the parties  in this action, excluding governmental agencies of the united states and the Commonwealth of
   Massachusetts ("governmental agencies"),  residing in Massachusetts reside in the same division? -  (See Local Rule 40.1(d)).

                                                        YES ☒            NO ☐

       A.      If yes, in which division do all of the non-governmental parties reside?

               Eastern Division ☒         Central Division ☐         Western Division ☐

       B.      If no, in which division do the majority of the plaintiffs or the only parties, excluding governmental agencies,  residing
               in Massachusetts reside?

               Eastern Division ☐         Central Division ☐         Western Division ☐

8. If filing a Notice of Removal - are there any motions pending in the state court requiring the attention of this Court?  (If yes, submit a
   separate sheet identifying the motions)

                                                        YES ☐            NO ☒

(PLEASE TYPE OR PRINT)

ATTORNEY'S NAME   R. Bruce Allensworth, Phoebe S. Winder and Bradley C. Morin, KIRKPATRICK & LOCKHART PRESTON GATES

ELLIS LLP

ADDRESS    State Street Financial Center, One Lincoln Street, Boston MA 02111

TELEPHONE NO.    (617) 261-3100