**UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**

_____
                                    )
JOSEPH G. CURTIS, and               )
ELIZABETH CURTIS,                   )
                                    )    C.A. No. 1:08-cv-10488-WGY
            Plaintiffs,             )
                                    )
v.                                  )    **FIRST AMENDED COMPLAINT**
                                    )
AMERIQUEST MORTGAGE                 )    **Leave to File <u>Granted</u>**
CORPORATION, and                    )    **on July 21, 2008 (Paine, Matthew).**
DEUTSCHE BANK NATIONAL              )
TRUST COMPANY, as TRUSTEE           )
of AMERIQUEST MORTGAGE              )
SECURITIES, INC. ASSET-BACKED       )
PASS THROUGH CERTIFICATES,          )
SERIES 2004-R10                     )
                                    )
            Defendants.             )
_____)

## I.    PRELIMINARY STATEMENT

1.      This is an action brought by two Cotuit homeowners, Joseph and Elizabeth Curtis

("Plaintiffs"), against their original mortgage lender and current mortgage servicer, Ameriquest

Mortgage Company ("Ameriquest"), and the current holder of their mortgage, Deutsche Bank

National Trust Company ("Deutsche Bank").

        As is more fully set forth herein, Ameriquest used deceit and misrepresentation to induce

Plaintiffs to enter into a residential mortgage loan with unfair financial benefits to Ameriquest

and hidden costs to Plaintiffs.  In doing so, Ameriquest violated the Massachusetts consumer

protection statute M.G.L. c. 93A ("Chapter 93A"), as well as the common law.  Ameriquest also

violated Chapter 93A by failing to disclose to Plaintiffs, prior to their loan, closing that they

would not receive their loan on the terms originally promised to them by Ameriquest.

1

After luring Plaintiffs into this unfair transaction, Ameriquest thereafter engaged in abusive, deceptive and unfair debt collection practices in servicing Plaintiffs' mortgage by failing to properly credit payments to Plaintiffs' mortgage account in violation of the Fair Debt Collection Practices Act (FDCPA), 15 U.S.C. § 1692 *et seq.*.  In addition, by failing to make appropriate corrections to Plaintiffs' mortgage account to properly reflect their mortgage payments and placing Plaintiffs' mortgage account in default, Ameriquest breached its contract with Plaintiffs and violated the mortgage servicer provisions of the Real Estate Settlement Procedures Act (RESPA), 12 U.S.C. § 2605.  Ameriquest then presented this alleged default to Deutsche Bank as justification for it to initiate foreclosure proceedings against Plaintiffs' property without ever providing Plaintiffs with a written response to their request for an explanation as to why their mortgage account had been placed in default.  Such conduct constitutes yet another RESPA violation.  Deutsche Bank thereafter unjustifiably threatened to foreclosure on Plaintiffs' Cotuit Home, which has (a) caused them to needlessly suffer severe emotional distress and mental anguish, and (b) forced them to incur legal expenses to prevent the foreclosure sale.  These actions, taken collectively, have caused substantial emotional and financial harm to Plaintiff for which they herein seek redress.

## II.    PARTIES

2.      Plaintiffs, Joseph G. Curtis and Elizabeth Curtis ("Mr. & Mrs. Curtis"), are individuals who reside at 148 Hollow Road, Cotuit (Barnstable), MA 02635 (the "Cotuit Home").

3.      Defendant Ameriquest Mortgage Company ("Ameriquest") is a Delaware corporation whose principal place of business is 1100 Town & County Road, Orange, CA 92000. Ameriquest's business includes making and refinancing consumer loans secured by residential property.  At all times relevant to this Complaint, Ameriquest regularly extended consumer

credit payable by written agreement in more than four installments or for which a finance charge is imposed.

4.      Defendant Deutsche Bank National Trust Company, as Trustee of Ameriquest Mortgage Securities, Inc. Asset-Backed Pass Through Certificates, Series 2004-R10 ("Deutsche Bank"), has a principal place of business located at 1761 East Street, Andrew Place, Santa Anna, California 92705.  Deutsche Bank is the current holder of Plaintiff's mortgage.

### III.     JURISDICTION AND VENUE

5.      This action was originally filed in Barnstable Superior Court, Barnstable County, Massachusetts, which had jurisdiction over the matter and these Defendants pursuant to M.G.L.c. 223A, §3, c. 212, §4 and c. 214, §1.

6.      The action was subsequently removed by the Defendants to this Court pursuant to 12 U.S.C. §§ 1441, *et seq.,* and on the grounds that it has jurisdiction over the matter pursuant to 28 U.S.C. § 1332.

7.      By this amendment, this Court will also have jurisdiction over this matter pursuant to 12 U.S.C. § 2605, 15 US.C. § 1692k and 28 US.C. § 1331.  Plaintiffs also assert claims against the Defendants under state law, which may, with the Court's permission, be brought with the supplemental jurisdiction of this Court pursuant to28 US.C. § 1367.

8.      Venue lies in this district pursuant to 28 U.S.C. 1391(a).

### VI.     FACTS

9.      Mr. & Mrs. Curtis are unsophisticated consumers with little experience in mortgage financing.  They own the Cotuit Home.

10.     In the Fall of 2004, an Ameriquest representative named "John" contacted Mr. Curtis by telephone on five (5) separate occasions and solicited him to refinance with Ameriquest in order

to pay off his existing mortgage with Cape Cod Cooperative Bank and to consolidate some of the couple's other debts.

11.    Based on their discussions, Ameriquest and Plaintiffs agreed that Ameriquest would provide Mr. & Mrs. Curtis with a 9.7% fixed rate mortgage loan.

12.    The Ameriquest representative never provided Mr. & Mrs. Curtis with any information regarding settlement charges or fees, and did not mention the prospect of a prepayment penalty prior to closing.

13.    Rather, the Ameriquest representative assured Mr. & Mrs. Curtis that they could refinance within twelve (12) months of the closing and obtain a lower, fixed-rate mortgage of 7%-8%.

14.    On or about November 5, 2004, an attorney appeared at Mr. Curtis' business office.  This individual presented Mr. & Mrs. Curtis with a closing package that included a note and mortgage on terms that were materially different from those previously agreed to by Ameriquest and Mr. & Mrs. Curtis.  Unbeknownst to Mr. & Mrs. Curtis, this note and mortgage (hereinafter, the "Ameriquest Loan") contained an adjustable, rather than fixed rate, and the loan terms included a prepayment penalty – which never been previously discussed with Mr. & Mrs. Curtis.

15.    The November 5, 2004 loan Settlement Statement shows that a "loan discount fee" of 4.275% ($19,878.75) was paid to Ameriquest.

16.    Based on the substantial amount of this fee, Mr. & Mrs. Curtis believe and therefore aver that they were not provided with a "discount" of any kind on the rate in the Ameriquest Loan transaction.

17.     Furthermore, Ameriquest never offered Mr. & Mrs. Curtis an alternative loan with a higher rate that did not involve payment of discount points. Therefore, they had no opportunity to evaluate whether the "discount" would be advantageous to them.

18.     In addition, the Ameriquest Loan contains a "one-way" variable rate provision under which the rate can increase from the initial rate disclosed in the loan note, but can never decrease below that rate.

19.     Mr. & Mrs. Curtis did not understand the variable rate associated with the Ameriquest Loan until many months after the transaction.

20.     The Ameriquest Loan is a "federally related mortgage loan" as that term is defined in the RESPA.

21.     At some point subsequent to the Ameriquest Loan transaction, Ameriquest sold Plaintiffs' mortgage to Deutsche Bank – who thereafter became the holder of Plaintiffs' mortgage loan.

22.     Despite this sale, Ameriquest continued act as Plaintiffs' loan "servicer," as that term is defined in the RESPA, for Deutsche Bank.  Ameriquest also acts as a "debt collector" of the Plaintiffs' "debt" as those terms are defined in the FDCPA.

23.     In May of 2007, Mr. & Mrs. Curtis were notified by Ameriquest that they were in arrears of their mortgage payments without any explanation as to how, why or in what amount.

24.     Mr. & Mrs. Curtis have made each and every payment owed under their Ameriquest Loan timely and in full compliance with the terms of the note and mortgage.

25.     Following their receipt of Ameriquest's notification, Mr. & Mrs. Curtis attempted to contact Ameriquest on several occasion to inquire about and possibly cure any alleged deficiency in their mortgage payments.

26.     Despite these repeated efforts, Ameriquest and its representatives wholly failed to provide Mr. & Mrs. Curtis with any explanation or opportunity to remedy the alleged deficiency.

27.     Rather, Ameriquest thereafter treated Plaintiffs' mortgage account to be in default and serviced their account as a debt in default.

28.     On or about August 21, 2007, Deutsche Bank, through its attorneys, wrote to Plaintiffs and informed them – without further explanation – that they were "presently in default under the terms of your Note and Mortgage secured by the property referenced above (the Cotuit Home). Specifically, you have failed to make payments on this note as agreed."  A copy of counsel's letter to Mr. & Mrs. Curtis, dated August 21, 2007, is attached hereto as Exhibit "A."

29.     This correspondence also indicated that Deutsche Bank had chosen to invoke the power of sale contained in the mortgage and that it would commence foreclosure proceedings against Mr. & Mrs. Curtis.  *See* Exhibit "A."

30.      On September 26, 2007, Mr. Curtis wrote to counsel for Deutsche Bank disputing that they were in default and requesting information supporting the allegations contained in his August 21st correspondence (*i.e.* Deutsche Bank's decision to seek to foreclose on the Cotuit Home).  A copy of Mr. Curtis' September 26th letter is attached hereto as Exhibit "B."

31.     Despite this written request, neither Deutsche Bank nor Ameriquest ever provided Plaintiffs with a written response acknowledging receipt of their inquiry.

32.     As neither Deutsche Bank nor Ameriquest would provide Plaintiffs with any information regarding their alleged default, Mr. Curtis was forced to contact the Massachusetts Attorney General's Consumer Protection Division ("AG-CPD") in the hope that they might obtain some sort of explanation as to Ameriquest's claim that he and his wife were in default under the terms of their mortgage.

33.     On or about October 16, 2007, Diane L. Lawton, Managing Attorney in the AG-CPD, wrote to Mr. Curtis in response to his previous inquiry. A copy of Ms. Lawton's letter to Mr. Cutis, dated October 16, 2007, is attached hereto as <u>Exhibit "C."</u>

34.     Ms. Lawton indicated that Ameriquest had claimed that Mr. & Mrs. Curtis were delinquent in a single mortgage payment (in May 2007) and that two checks that they had submitted as payment on their mortgage had been returned by Ameriquest for being "insufficient." *See* <u>Exhibit "C."</u>

35.     Neither Deutsche Bank nor Ameriquest ever provided Plaintiffs with the information set forth in Paragraph No. 34.

36.     On or about January 22, 2008, Mr. & Mrs. Curtis received notice from the Massachusetts Land Court that Deutsche Bank had filed a complaint with said court for authority to foreclose on their Cotuit Home. A copy of the Land Court's notice is attached hereto as <u>Exhibit "D."</u>

37.     On or about February 7, 2008, Mr. & Mrs. Curtis received a "Notice of Foreclosure Sale," which provided them with notice of Deutsche Bank's intent to conduct a foreclosure sale of their Cotuit Home on March 14, 2008 at 12:00 pm by public auction. A copy of said Notice is attached hereto as <u>Exhibit "E."</u>

38.     As no assignment to Deutsche Bank appears of record in the Barnstable County Registry of Deeds, Deutsche Bank lacks authority to act under the power of sale.

39.     On March 4, 2008, Plaintiffs filed their Complaint and Motion for a Temporary Restraining Order in Barnstable Superior Court requesting, among other things, that the Court stay the foreclosure sale of their Cotuit Home.

40.     Only after the filing of this lawsuit and the motion did Deutsche Bank agree to postpone the foreclosure sale.

41.    Mr. & Mrs. Curtis would like to refinance out of the Ameriquest Loan with another lender, but the actions of Ameriquest and Deutsche Bank in reporting a non-existent default to various credit bureaus has adversely affected their credit score so as to preclude them from doing so.

42.    Even if refinancing was a viable option to Plaintiffs, they would still be unjustly subject to the prepayment penalty associated with the Ameriquest Loan.

43.    Furthermore, Mr. & Mrs. Curtis now understand that the thousands of dollars in points and closing costs that they paid in connection with their Ameriquest Loan effectively acts as an additional *de facto* prepayment penalty even if they could refinance early (and even if that refinancing is with Ameriquest) because those points and closing costs are treated as earned when the loan is made.  As such, they drive up the effective rate on the original Ameriquest Loan if that loan is repaid in a shorter period than its expected term.

44.    In addition, by refinancing the points on the Ameriquest Loan, Mr. & Mrs. Curtis would be required to pay interest on those points in connection with the refinanced loan.

45.    Ameriquest's and Deutsche Bank's actions, as cited above, have caused Plaintiffs to needlessly suffer severe emotional distress and mental anguish, and forced them to incur substantial legal expenses to prevent the foreclosure sale on their Cotuit Home.

## COUNT I - VIOLATION OF CHAPTER 93A
### (As Against Ameriquest)

46.    Mr. & Mrs. Curtis repeat and re-allege all paragraphs above as if set forth fully herein.

47.    Ameriquest has violated Chapter 93A with respect to the Ameriquest Loan by utilizing terms and practices that were unfair, deceptive, and/or unconscionable.  The violations Ameriquest engaged in included, without limitation:

(a)     Employing a bait and switch strategy by offering Mr. & Mrs. Curtis a mortgage on favorable terms prior to closing and then offering a different mortgage loan product at closing;

(b)     Promising to refinance Mr. & Mrs. Curtis mortgages on more favorable terms within twelve (12) months to induce them to close their loan with Ameriquest;

(c)     Implying that Mr. & Mrs. Curtis were being given a loan "discount," but failing to provide any such discount to them;

(d)     Using a prepayment penalty to trap Mr. & Mrs. Curtis into foregoing better loan terms from other lenders and/or to encourage them to refinance on disadvantageous terms with Ameriquest;

(e)     Providing confusing variable rate provisions in its loans designed to protect Ameriquest if rates increase from those in place when the loan was made without providing a benefit to Mr. & Mrs. Curtis when rates decline;

(f)     Failing to make disclosures that comply with 940 C.M.R. §8, or, in the alternative as mandated by G.L. c. 184 § 17D which required disclosure of settlement costs and related information;

(g)     Failing to make disclosures that comply with and 209 C.M.R. § 32.18;

(h)     Failing to make disclosures that comply with and 209 C.M.R. § 32.19(2);

(i)     Manufacturing a non-existent default in the servicing of the Ameriquest Loan in order to needlessly assess additional fees and costs to Plaintiffs and to enable Deutsche Bank to initiate foreclosure proceedings against their Cotuit Home.

48.    Ameriquest's conduct as cited above was willful or knowing within the meaning of

Chapter 93A.

49.    Mr. & Mrs. Curtis were injured and suffered damages by virtue of Ameriquest's

violations.

50.     The demand letter requirement under Chapter 93A does not apply to Mr. & Mrs. Curtis because they are asserting their claims defensively against Ameriquest to prevent the foreclosure on their Cotuit Home.

## COUNT II - CLAIMS FOR UNCONSCIONABILITY AND/OR ILLEGALITY
### (Against Ameriquest)

51.     Mr. & Mrs. Curtis repeat and re-allege Paragraph Nos. 1-50 above as if set forth fully herein.

52.     Under Massachusetts law, contract terms that violate either a statute or a validly enacted regulation

are void as against public policy.

53.     Under Massachusetts law, contract Contract terms that violate either a statute or a validly enacted regulation are unconscionable and unenforceable.

54.     The terms of the Ameriquest Loan violate the Chapter 93A and M.G.L. c. 183 §28C.

55.     The terms of the Ameriquest Loan are also so unconscionable and extreme enough to warrant voiding the mortgage.

56.     Mr. & Mrs. Curtis are entitled to relief from the unconscionable and/or illegal contract terms, including but not limited to cancellation of the Ameriquest Loan.

## COUNT III - BREACH OF CONTRACT
### (As Against Ameriquest)

57.     The allegations of Paragraphs 1 through 56 above are re-alleged and incorporated herein by reference.

58.     Ameriquest and Mr. & Mrs. Curtis agreed to different terms in their original oral and written agreement than the ones Ameriquest presented at closing in the Ameriquest Loan.

59.     To the extent that Ameriquest offered terms to Mr. & Mrs. Curtis prior to closing,

Ameriquest formed a contract with Mr. & Mrs. Curtis to provide those promised terms.

60.     The promised terms included, without limitation, a lower fixed interest rate, lower

monthly payments, lower settlement costs, and no prepayment penalty.

61.     By delivering different terms at closing than the ones initially promised, Ameriquest

breached its contract with Mr. & Mrs. Curtis.

62.     Ameriquest's conduct has caused Mr. & Mrs. Curtis irreparable harm including, without

limitation, increasing the amount of monthly payments owed to potentially unaffordable levels

thereby putting them at imminent risk of foreclosure, as well as by discouraging Mr. & Mrs.

Curtis from refinancing at more affordable rates through its imposition of

undisclosed/unjustified loan discount fees in conjunction with a prepayment penalty.

63.     Ameriquest's conduct has increased the cost of the loan to Mr. & Mrs. Curtis.

64.     Mr. & Mrs. Curtis are entitled to damages and equitable remedies for Ameriquest's

breach of contract.

## COUNT IV - INTENTIONAL MISREPRESENTATION
### (As Ameriquest)

65.     The allegations of Paragraphs 1 through 64 above are re-alleged and incorporated herein

by reference.

66.     Ameriquest made misrepresentations to Mr. & Mrs. Curtis about the terms of the

Ameriquest Loan, which Mr. & Mrs. Curtis relied upon to their detriment.

67.     Ameriquest's misrepresentations to Mr. & Mrs. Curtis included, without limitation:

      (a)    making preliminary oral and written disclosures pertaining to the interest
              rate, monthly payments, settlement charges and other loan terms which
              differed significantly from the final loan terms offered;

      (b)    promising a discounted rate in connection with payment of "discount
              points" without providing said discount; and

(c)     making assurances of prompt refinancing at better terms.

68.     Ameriquest made these misrepresentations to induce Mr. & Mrs. Curtis to enter into a refinancing agreement with it.

69.     Mr. & Mrs. Curtis were induced to enter into a refinancing agreement with Ameriquest and suffered damages as a result.

70.     Ameriquest's practices caused Mr. & Mrs. Curtis harm including, without limitation, increasing the amount of monthly payments owed to a potentially unaffordable level thereby putting Mr. & Mrs. Curtis at imminent risk of foreclosure, and preventing Mr. & Mrs. Curtis from refinancing with other lenders to obtain more favorable terms through its imposition of undisclosed/unjustified points and a prepayment penalty.

71.     Mr. & Mrs. Curtis are entitled to damages and equitable remedies for intentional misrepresentation.

## COUNT V - UNJUST ENRICHMENT
### (As Ameriquest and Deutsche Bank)

72.     The allegations of Paragraphs 1 through 71 above are re-alleged and incorporated herein by reference.

73.     By its wrongful acts and omissions, including but not limited to (a) making a predatory and unfair mortgage loan to Mr. & Mrs. Curtis, and (b) servicing that loan (all as described herein), Ameriquest and Deutsche Bank have been unjustly enriched at Plaintiffs' expense, and thus Mr. & Mrs. Curtis have been unjustly deprived.

74.     By reason of the foregoing, Mr. & Mrs. Curtis seek restitution from Ameriquest and Deutsche Bank, and an order of this Court disgorging all profits, benefits, and other compensation obtained by Ameriquest and Deutsche Bank from their wrongful conduct.

## COUNT VI - VIOLATION OF REAL ESTATE SETTLEMENT PROCEDURES ACT
### (As Against Ameriquest and Deutsche Bank)

75.    The allegations of Paragraphs 1 through 74 above are re-alleged and incorporated herein by reference.

76.    On September 26, 2007, Plaintiffs sent Deutsche Bank a "qualified written request" as that term is defined under RESPA, 12 U.S.C. § 2605(e)(1)(B), regarding the proper crediting of payments to their mortgage account.

77.    In the qualified written request, Plaintiffs conveyed their belief to Deutsche Bank that their account was not in default and requested that Deutsche Bank correct the error.  Plaintiffs also requested that Deutsche Bank and/or Ameriquest provide them with information and documentation supporting its claim that their account was in default.

78.    Deutsche Bank and Ameriquest violated RESPA, 12 U.S.C. § 2605(e)(1)(A), by failing to provide a written response acknowledging receipt of Plaintiffs' qualified written request no later than 20 days after receipt of the request.

79.    Deutsche Bank and Ameriquest violated RESPA, 12 U.S.C. § 2605(e)(2)(A), by failing to make appropriate corrections to Plaintiffs' account in response to the qualified written request, including the crediting of any late charges or penalties, and failing to transmit written notice of such corrections to Plaintiffs no later than 60 days after receipt of the Plaintiffs' qualified written request.

80.    Deutsche Bank and Ameriquest violated RESPA, 12 U.S.C. § 2605(e)(2)(C) by failing to provide Plaintiffs with the information and documentation requested, or an explanation why the information sought was unavailable, no later than 60 days after receipt of the Plaintiffs' qualified written request.

81.    Deutsche Bank and Ameriquest violated RESPA, 12 U.S.C. § 2605(e)(2) by refusing to cease their collection efforts and foreclosure proceedings after receiving Plaintiffs' qualified written request.

82.    Upon information and belief, Deutsche Bank and Ameriquest violated RESPA, 12 U.S.C. 2605(e)(3), by providing information to consumer reporting agencies regarding overdue payments allegedly owed by Plaintiffs that were related to their qualified written request.

83.    Deutsche Bank and Ameriquest have engaged in a pattern or practice of non-compliance with the requirements of the mortgage servicer provisions of RESPA as set forth in 12 U.S.C. § 2605, which has caused harm to Plaintiffs.

## COUNT VII – VIOLATION OF THE FAIR DEBT COLLECTION PRACTICES ACT
### (As Against Ameriquest)

84.    The allegations of Paragraphs 1 through 83 above are re-alleged and incorporated herein by reference.

85.    Ameriquest violated the FDCPA, 15 U.S.C. § 1692f, by using unfair and unconscionable means to collect the debt owed by Plaintiffs, including the collecting and attempting to collect of interest and other charges, fees and expenses not authorized by the original Ameriquest Loan, or otherwise legally chargeable to Plaintiffs, as more fully set forth above.

86.    Ameriquest violated the FDCPA, 15 U.S.C. § 1692e(2), by misrepresenting the character, amount and legal status of Plaintiffs' debt.

87.    Ameriquest violated the FDCPA, 15 U.S.C. § 1692g(a)(1), by failing to accurately and fully state in communications to Plaintiffs "the amount of the debt."

### COUNT VII – NEGLIGENCE
**(As Against Ameriquest and Deutsche Bank)**

88.    The allegations of Paragraphs 1 through 87 above are re-alleged and incorporated herein by reference.

89.    Ameriquest and Deutsche Bank owed a duty to Plaintiffs to fairly and competently (a) service the Ameriquest Loan, and (b) accept and properly apply Plaintiffs' monthly mortgage payments.

90.    By (a) failing to properly apply all payments received from Plaintiffs to Plaintiffs mortgage account according to the terms of the Ameriquest Loan, (b) improperly declaring Plaintiffs to be in default of the Ameriquest Loan, (c) improperly refusing to accept mortgage payments from Plaintiffs, and (d) improperly initiating foreclosure proceedings against Plaintiffs' Cotuit home, Ameriquest and Deutsche Bank breached said duty.

91.    Plaintiffs have suffered substantial damages as a direct and proximate result of Ameriquest's and Deutsche Bank's negligence.

92.    As such, Plaintiffs are entitled to recover from Ameriquest and Deutsche Bank for said damages.

### COUNT VIII – EMOTIONAL DISTRESS
**(As Against Ameriquest and Deutsche Bank)**

93.    The allegations of Paragraphs 1 through 92 above are re-alleged and incorporated herein by reference.

94.    Ameriquest's and Deutsche Bank's conduct as set forth in Paragraphs Nos. 1 through 92 was extreme and outrageous beyond all possible bounds of decency and utterly intolerable in a civilized society.

95.    Ameriquest's and Deutsche Bank's conduct as set forth in Paragraphs Nos. 1 through 92 inflicted severe mental anguish and emotional distress on Plaintiffs for which they knew or should have known that their acts would likely cause such harm.

96.     Ameriquest's and Deutsche Bank's conduct as set forth in Paragraphs Nos. 1 through 92 was the cause of Plaintiffs' mental anguish and emotional distress.

97.    The mental anguish and emotional distress sustain by Plaintiffs was severe, and is a harm for which Ameriquest and Deutsche Bank are obligated to compensate them.

### **REQUESTED RELIEF**

**WHEREFORE**, Mr. & Mrs. Curtis respectfully requests that this Honorable Court:

(a)    Award Plaintiffs treble damages attorneys' fees and costs pursuant to M.G.L. c. 93A;

(b)    Award actual and compensatory damages, including those for mental anguish and emotional distress, in an amount to be determined at trial;

(c)    Award punitive or exemplary damages in an amount to be determined at trial;

(d)    Declare that Ameriquest and/or Deutsche Bank violated RESPA, enjoin them from committing any future violations of the Act, and award Plaintiffs actual damages and $1,000 in statutory damages pursuant to 12 U.S.C. § 2605(f);

(e)    Declare that Ameriquest and/or Deutsche Bank violated the FDCPA, enjoin them from committing any future violations of the Act, and award Plaintiffs actual damages and $1,000 in statutory damages pursuant to 15 U.S.C. § 1692k;

(f)    Award Plaintiff reasonable attorney's fees and litigation expenses, plus costs of suit, pursuant to 12 U.S.C. § 2605(f) and 15 U.S.C. § 1692k(3);

(g)    Order Ameriquest and Deutsche Bank to disgorge all profits, benefits, and other compensation improperly obtained by them from Plaintiffs;

(h)    Void and/or reform the Ameriquest Loan to conform to the terms and conditions originally agreed to by Ameriquest and Plaintiffs; and

(i)         grant such other relief as the Court deems just and appropriate.


                    Respectfully Submitted,
                    Joseph Curtis & Elizabeth Curtis,
                    by their attorney,


                    /s/  Matthew J. Dunn_____
                    Matthew J. Dunn, BBO# 654041
                    The Dunn Law Group
                    15 Broad Street, Suite 512
                    Boston, MA  02109
                    (617) 725-0033


Dated:  July 21, 2008